Esther LaFARGUE,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 85–7466.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 11, 1986.

Decided Sept. 25, 1986.

Harry Margolis, Los Gatos, Cal., for petitioner-appellant.

Robert A. Berstein, Michael L. Paup, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before WRIGHT and FARRIS, Circuit Judges, and LETTS,* District Judge.

EUGENE A. WRIGHT, Circuit Judge.

This appeal involves taxation of a private annuity negotiated in an intrafamily arrangement with no arm's-length bargaining. We affirm on the Tax Court's reasoning, T.C.M. 1985–90, and we reject appellant's meritless procedural challenges.

BACKGROUND

After inheriting a sizeable estate from her parents, LaFargue became concerned about property management. Desiring to provide for the economic security of herself and of her daughter Emily, she sought the advice of an attorney friend, Harry Margolis.

* Hon. J. Spencer Letts of the Central District of California.

He devised a two-step plan. First, a trust was created with a nominal corpus, $100. Second, the trustees executed a contract for annual payments to LaFargue in exchange for a portion of the inherited property.

On February 10, 1971, LaFargue executed an irrevocable trust with the three chosen trustees: her youngest sister, the son of family friends, and Mr. Margolis. The primary beneficiary was Emily La-Fargue.

Two days later, in an instrument entitled "Annuity Agreement," LaFargue conveyed to the trust assets having a fair market value of $335,000. Her basis in the property was $320,541.

In return, LaFargue received an unsecured promise by the trustees to pay her $16,502 annually. Her life expectancy was then 20.3 years.[1]

LaFargue has received $16,502 annually since 1971. She reported these amounts on her tax returns as payments on a private annuity, and maintained that they were excludable from ordinary income. The Commissioner determined that the transaction was not bona fide and assessed deficiencies and penalties.

The Tax Court characterized the $16,502 annual payments as distributions of trust income, taxable to the grantor under 26 U.S.C. §§ 677(a) and 671. *LaFargue v. Commissioner*, 73 T.C. 40, 53–61 (1979). We reversed and remanded, holding that the transaction was a sale in exchange for an annuity subject to the tax provisions of 26 U.S.C. § 72. 689 F.2d 845, 846–47 (9th Cir.1982).

On remand, the Tax Court held for the Commissioner and found that taxpayer's "investment in the contract" under section 72(b) was the present value of the annuity. T.C.M. 1985–90, at 10. It concluded that the excess of the fair market value of the property transferred over the annuity's present value constituted a gift. *Id.* at 8, 10.

ANALYSIS

A. *Taxation of the Annuity*

Section 72 of the Internal Revenue Code governs taxation of annuities.[2] It excludes from income a fraction of each payment received as an annuity to reflect the return of capital over the annuity's expected term. 26 U.S.C. § 72(b); 1 Mertens, *Law of Federal Income Taxation* § 6A.01, at 2 (1986). The amount excluded from income is reflected in the "exclusion ratio," which equals the amount invested divided by the expected return.

The parties agree that the expected return is $335,000. However, they disagree over LaFargue's "investment in the contract," which is defined as

(A) the aggregate amount of premiums or other consideration paid for the contract, minus

(B) the aggregate amount received under the contract before such date, to the extent that such amount was excludable from gross income under this subtitle or prior income tax laws.

26 U.S.C. § 72(c)(1).

 Generally, "consideration paid" is the fair market value of the property transferred. *212 Corp. v. Commissioner*, 70 T.C. 788, 798 (1978). This rule applies except "where the parties are not unrelated

---

1. If she were to live that long, she would recover an amount equal to the fair market value of the assets transferred.

2. Section 72 provides in pertinent part:

 **§ 72. Annuities; certain proceeds of endowment and life insurance contracts**

 **(a) General rule for annuities.**—Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract.

 **(b) Exclusion ratio.**—Gross income does not include that part of any amount received as an annuity under an annuity, endowment, or life insurance contract which bears the same ratio to such amount as the investment in the contract (as of the annuity starting date) bears to the expected return under the contract (as of such date). This subsection shall not apply to any amount to which subsection (d)(1) (relating to certain employee annuities) applies.

parties dealing at arm's-length." 1 Mertens, § 6A.06 at 31; *212 Corp.,* 70 T.C. at 798. Then, consideration paid is the actuarial value of the annuity at the time of transfer. *See Benson v. Commissioner,* 80 T.C. 789, 800–03 (1983); *212 Corp.,* 70 T.C. at 798; *Estate of Bell v. Commissioner,* 60 T.C. 469, 473 (1973).[3]

■ Such is the situation here. This was an intrafamily arrangement. There was no arm's-length bargaining. The annuity payments were funded entirely by assets La-Fargue transferred to the trust.

■ Where the fair market value of the property transferred exceeds the value of the annuity received, the excess is deemed a gift absent evidence to the contrary. *Benson,* 80 T.C. at 800–03; *212 Corp.,* 70 T.C. at 798; *Bell,* 60 T.C. at 473. Absent other motivations such as the desire to make a gift, one does not exchange property for contractual rights of substantially lesser market value.

■ By reciting that no interest or discount factor was involved[4] and no gift intended, LaFargue could not nullify the effect of Section 72. *See Benson,* 80 T.C. at 803 n. 7 (rejecting statement in annuity agreement that no gift was intended). Calculation of the present value of a stream of annuity payments requires use of a discount factor. As the Tax Court held, "parties to an annuity contract cannot bargain around this requirement." T.C.M. 1985–90, at 9.

LaFargue relies on former Section 483(f)(5),[5] which provided:

(5) **Annuities.**—This section shall not apply to any amount the liability for which depends in whole or in part on the life expectancy of one or more individuals and which constitutes an amount received as an annuity to which section 72 applies.

■ Section 483 involves imputed interest for certain deferred payments. It is an abuse control provision designed to prevent conversion of ordinary income into capital gain. *Kingsley v. Commissioner,* 662 F.2d 539, 540 (9th Cir.1981).

■ LaFargue offers no support for her argument that former Section 483(f)(5) barred the discounting of an annuity to present value for purposes of determining the § 72(b) exclusion ratio. It cannot serve as a sword to strike down "imputing" interest to an annuity that was drafted without an interest component. *Cf. Garvey, Inc. v. United States,* 1 Cl.Ct. 108, 126–29 (1983) (rejecting taxpayer's argument that interest can be deducted by payor of annuity), *aff'd,* 726 F.2d 1569, 1574 (Fed.Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984).[6]

### B. *Open Transaction Doctrine*

Appellant asserts that the Tax Court ignored the "open transaction" doctrine, which allows recovery of basis in the assets

---

**3.** LaFargue asserts that her "investment in the contract" was $335,000, representing the fair market value of the property she transferred to the trust. This would mean an exclusion ratio of 100 percent. She asserts that Tax Court Judge Tannenwald "overrides the declared intent of LaFargue and imposes a present value regulation to create the fraction."

This dispute raises an issue of law, or a mixed question of law and fact, reviewable *de novo. See Magneson v. Commissioner,* 753 F.2d 1490, 1493 (9th Cir.1985). We reject appellee's characterization of the finding as purely one of fact.

**4.** Paragraph three of the Annuity Agreement states in pertinent part: "LAFARGUE and TRUSTEES have expressly agreed that no interest factor should be involved in this annuity agreement but do, however, recognize the possi-

bility that the Congress of the United States may, at some time, require an interest factor by statute."

**5.** This section was repealed by the Tax Reform Act of 1984, Section 41(b), Pub.L. No. 98–369, 98 Stat. 553. LaFargue correctly asserts that this court must consider the transaction in the context of 1971 law.

**6.** Finally, we reject LaFargue's criticism of the Tax Court's reliance on *Dickman v. Commissioner,* 465 U.S. 330, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984), which was decided thirteen years after the transaction under consideration. It was cited to rebut LaFargue's reliance on cases holding that intrafamily interest-free demand loans do not result in taxable gifts. It did not concern annuities.

transferred before recognition of gain. *See LaFargue,* 689 F.2d at 847 n. 3. We have considered this argument, and we find it meritless.

Tax treatment of the annuity income here is governed by Section 72. *See Garvey,* 726 F.2d at 1573 (open transaction doctrine is displaced by § 72). The only possible applicability of the open transaction doctrine is to the gain element of the annuity purchase. But appellee informs us that the Commissioner has not sought to tax any gain here.[7]

### C. *Misuse of Grand Jury Materials*

Appellant asserts that the Tax Court should have ordered a hearing on the merits of her claim that issues in the *LaFargue* case were presented to the grand jury that was investigating tax fraud by Harry Margolis and others. She relies on *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), and *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), holding that disclosure of grand jury materials for an IRS audit of civil tax liability is unavailable under Fed.R.Crim.P. 6(e)(3)(C)(i).

The court rejected this claim, stating "petitioner points to no specific Grand Jury information which might have been disclosed and improperly utilized." T.C.M. 1985–90, at 13. We agree. She has not shown how grand jury material may have tainted this civil audit.

### D. *Tax Court Procedures*

Lastly, appellant makes a weak argument about the Tax Court's failure to make clear findings or to grant oral argument on remand. She fails to demonstrate how the findings are unclear or deficient. She admits that the decision to dispense with oral

argument was well within the court's discretion.

AFFIRMED.

---

7. The Tax Court held that LaFargue realized no gain on the transfer because she received an annuity valued at $176,990 while her basis in the property transferred was $320,541. Had it sustained her argument that there was no gift element, it would have had to consider this issue.