A. Sidney MALBON and Helene J. Malbon, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 94–35188.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 31, 1994.

Decided Dec. 28, 1994.

Thomas J. O'Rourke, Shaw, Bransford & O'Rourke, Washington, DC, for plaintiffs-appellants.

Charles Bricken, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant-appellee.

Before: WRIGHT, BEEZER and FERNANDEZ, Circuit Judges.

---

fer or reassignment, a reinstatement, a restoration, a reemployment, a performance evaluation, a decision concerning pay benefits or awards, or any other significant change in duties or responsibilities. 5 U.S.C. § 2302(a)(2)(A).

BEEZER, Circuit Judge:

Taxpayers, A. Sidney Malbon and Helene Malbon, appeal the district court's denial of a refund for the 1987 tax year. The taxpayers contend that they are entitled to a refund for individual income tax paid on Sidney Malbon's lump-sum credit payment received pursuant to the Civil Service Retirement System ("CSRS"). The taxpayers also contend that the "deemed deposit" received as part of the lump-sum payment was not taxable in 1987 because it was not actually received by the taxpayers. The district court granted summary judgment in favor of the United States of America. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I

The pertinent facts are undisputed. Sidney Malbon was an employee of the United States of America for more than 32 years. During that time period he participated in the CSRS and made mandatory contributions in the amount of $47,783.64. He retired on December 31, 1986. At the time of his retirement he was informed by the Office of Personnel Management ("OPM") that he could either receive his annuity or elect an alternative form of annuity pursuant to 5 U.S.C. § 8343a. The alternative form of annuity provided Malbon with a lump-sum payment of $48,135.64 and a reduced annuity.[1]

Malbon elected the alternative form of annuity. In 1987, Malbon received $47,783.64 in a lump-sum payment and $22,143 as an annuity. He calculated the tax on the income in accordance with the instructions received from the Internal Revenue Service. In 1991, Malbon filed an amended tax return claiming a refund of $13,525.14 for the 1987

tax year based on his conclusion that the lump-sum payment was a tax free refund of his after-tax contributions and that he had not actually received the deemed deposit. The Internal Revenue Service disallowed the refund claim and the district court entered summary judgment in favor of the United States of America. *Malbon v. United States,* 846 F.Supp. 900 (W.D.Wash.1994).

## II

We review de novo the district court's grant of summary judgment. *Arnes v. United States,* 981 F.2d 456, 458 (9th Cir.1992).

## III

Federal employees eligible to participate in the CSRS contribute a portion of their salary to the Civil Service Retirement and Disability Fund ("Fund"). The employing agency makes a mandatory deduction from the employee's salary. 5 U.S.C. § 8334(a)(1). The amount is withheld from after-tax income and is therefore taxable the year the salary deduction is made. Contributions by the employing agency and any accrued interest are taxable upon distribution to the eligible employee. 26 U.S.C. §§ 72, 402(a).

Employees who leave federal service after meeting the eligibility requirements for retirement are entitled to a basic annuity. 5 U.S.C. § 8339. The amount of the basic annuity is determined by years of service and salary at retirement. 5 U.S.C. § 8339. In 1986, Congress provided that federal employees who met the retirement eligibility requirements and retired after June 5, 1986 could elect the basic annuity or an alternative form of annuity. 5 U.S.C. §§ 8342(a), 8343a.[2]

---

1. The lump-sum payment included $47,778.28 in contributions, pre–1957 interest of $5.36 and a $352 deemed deposit. The deemed deposit represented the amount Malbon would have contributed for temporary employment prior to 1955 if he had been a participant in CSRS.

2. Section 8343a provides in part:

(a) The Office of Personnel Management shall prescribe regulations under which an employee or Member may, at the time of retiring under this subchapter ... elect annuity bene-

fits under this section instead of any other benefits under this subchapter ... based on the service of the employee or Member.
(b) Subject to subsection (c), the Office shall by regulation provide for such alternative forms of annuities as the Office considers appropriate, except that among the alternatives offered shall be—
(1) an alternative which provides for—
(A) payment of the lump-sum credit to the employee or Member; and
(B) payment of an annuity to the employee or Member for life; and

The alternative annuity provided the employee with a lump-sum payment at retirement equal to the employee's contributions and an annuity in a reduced sum. 5 U.S.C. § 8343a. The alternative form of annuity is ultimately designed to be "actuarially equivalent to the present value" of the basic annuity. 5 U.S.C. § 8343a(c).

Taxation of annuities is governed by 26 U.S.C. § 72.[3] An annuity payment consists of both taxable income and a nontaxable return of the employee's contribution. Section 72 provides that the entire annuity payment is included in gross income and then a proportional amount of the nontaxable contribution is excluded. The amount of the non-taxable component is determined by dividing the amount of the employee's contribution by the number of annuity payments projected in life-expectancy tables. 26 U.S.C. § 72; 26 C.F.R. §§ 1.72–1; 1.72–9. The employee's contribution is recovered without further payment of income tax over the projected life of the annuity contract. *LaFargue v. Commissioner*, 800 F.2d 936, 938 (9th Cir.1986). Where the annuity payments cease before the employee's entire contribution is recovered, the amount of the unrecovered contribution is allowed as a deduction on the taxpayer's final income tax return. 26 U.S.C. § 72(b)(3).

The alternative form of annuity provides, however, that the employee may receive at retirement a lump-sum payment equal to the amount of the employee's contributions to the Fund. Section 72(e) governs any amount "received under an annuity, endowment, or life insurance contract, and ... is not received as an annuity." 26 U.S.C. § 72(e)(1)(A). Section 72(e)(2)(A) provides that an amount subject to section 72(e) is included in gross income when "received on or after the annuity starting date."[4] 26 U.S.C. § 72(e)(2)(A). Section 72(e)(5)(E), however, would exclude the amount of gross income to the extent it was in full discharge of the contract.[5] Malbon contends that the lump-sum payment is excluded from gross income pursuant to section 72(e)(5)(E) because the lump-sum payment was a separate contract under section 72(d). Section 72(d) provides that "employee contributions ... under a defined contribution plan may be treated as a separate contract."[6]

---

(2) in the case of an employee or Member who is married at the time of retirement, an alternative which provides for—
    (A) payment of the lump-sum credit to the employee or Member; and
    (B) payment of an annuity to the employee or Member for life, with a survivor annuity payable for the life of the surviving spouse.
In 1993, Congress amended the section, effective October 1, 1994, to provide the alternative form of annuity only to employees with life-threatening afflictions or critical medical conditions.

3. Section 72 provides in relevant part:
§ 72. **Annuities; certain proceeds of endowment and life insurance contracts**
(a) **General rule for annuities.**—Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract.
(b) **Exclusion ratio.—**
    (1) **In general.**—Gross income does not include that part of any amount received as an annuity under an annuity, endowment, or life insurance contract which bears the same ratio to such amount as the investment in the contract (as of the annuity starting date) bears to the expected return under the contract (as of such date).

    (2) **Exclusion limited to investment.**—The portion of any amount received as an annuity which is excluded from gross income under paragraph (1) shall not exceed the unrecovered investment in the contract immediately before the receipt of such amount.

4. Malbon received the lump-sum payment at issue after his annuity starting date.

5. Section 72(e)(5)(E) provides:
**Full refunds, surrenders, redemptions, and maturities.**—This paragraph shall apply to—
    (i) any amount received, whether in a single sum or otherwise, under a contract in full discharge of the obligation under the contract which is in the nature of a refund of the consideration paid for the contract, and
    (ii) any amount received under a contract on its complete surrender, redemption, or maturity. In the case of any amount to which the preceding sentence applies, the rule of paragraph (2)(A) shall not apply.
26 U.S.C. § 72(e)(5)(E).

6. Whether or not a separate contract exists is crucial to the application of section 72. "An amount constituting an 'investment in the contract' may only be offset against distributions under the same § 72 contract. A qualified plan

■ To be treated as a separate contract under section 72(d), contributions must be made under a defined contribution plan. Section 414(k) creates a hybrid plan, one with both a defined benefit and defined contribution component.[7] Section 414(k) allows a defined benefit plan to be treated as a defined contribution plan only "to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan." 26 U.S.C. § 414(k)(2). Malbon argues that his contributions are placed into a separate account in the CSRS, thus constituting a separate account pursuant to section 414(k). He, therefore, asserts that the lump-sum payment is not taxable income.[8]

Although an issue of first impression in this circuit, both the Fifth and Seventh Circuits have addressed the issue and recognized that section 414(k) creates a hybrid plan that consists of both defined contribution and defined benefit components. *Montgomery v. United States*, 18 F.3d 500 (7th Cir.1994); *Guilzon v. Commissioner*, 985 F.2d 819 (5th Cir.1993). In essence, both courts recognized that for the separate account to be treated as a defined contribution plan, it should have some of the characteristics of a defined contribution plan. Section

414(i) defines a "defined contribution plan" and provides:

> For the purposes of this part, the term "defined contribution plan" means a plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.

26 U.S.C. § 414(i).

In *Guilzon* the taxpayer was also a federal employee who elected an alternative form of annuity and received a lump-sum payment in the amount of his after tax contributions to the Fund. Although ultimately concluding that Guilzon's lump-sum payment was taxable, the Fifth Circuit concluded that Guilzon's contributions were maintained in a separate account and met the requirement of section 414(k) to be treated as a defined contribution plan. 985 F.2d at 822–23. The court, relying on the definition of a defined contribution plan in section 414(i), concluded that it was not required that individual gains and losses be credited to the participant's account and that merely establishing an account to collect contributions was sufficient to meet the separate account requirement of section 414(k).[9] *Id.* The Fifth Circuit read

---

could have several 'contracts' for one individual. If an employee's contribution are attributable to one contract and the employer's contributions are to another, the employee could not offset his own contributions against the employer's contributions in determining the amounts taxable under § 72. Thus, the determination of what constitutes a 'single contract' is important in applying § 72." 370 Tax Mgmt.2d. (BNA) A–25 (1994).

7. Section 414(k) provides in part:

(k) **Certain plans.**—A defined benefit plan which provides a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant shall—

. . . . .

(2) for purposes of [section] 72(d) ... be treated as consisting of a defined contribution plan to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan. . . .

26 U.S.C. § 414(k).

8. The separate account argument was accepted in *Guilzon v. Commissioner*, 985 F.2d 819 (5th Cir.1993), although the claim was ultimately rejected on other grounds. The argument was rejected by *Montgomery v. United States*, 18 F.3d 500 (7th Cir.1994), *George v. United States*, 30 Fed.Cl. 371 (Fed.Cl.1994), and *Shimota v. United States*, 21 Cl.Ct. 510 (Cl.Ct.1990), *aff'd*, 943 F.2d 1312 (Fed.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992).

9. Section 414(k) only applies to "[a] defined benefit plan which provides a benefit derived from employer contributions." The court in *Guilzon* ultimately concluded that the lump-sum payment was taxable because the benefits were not derived from employer contributions. The court based its conclusion on its determination that under the CSRS no employer contributions were made. As the magistrate judge correctly held, this conclusion is incorrect. The CSRS requires the employing agency to match the employee contribution. 5 U.S.C. § 8334(a)(1), 8348(c).

the language of section 414(i) as permissive, concluding that "may be allocated" indicated the posting of gains and losses to the individual's account is not mandatory to maintain a separate account. *Id.*

The Seventh Circuit disagreed in *Montgomery,* finding instead that an entry in the CSRS system recording a taxpayer's contributions was alone insufficient to meet the separate account requirement of section 414(k). The court noted that:

> The reference to separate account, if it is to identify a meaningful distinction between a defined benefit plan and a defined contribution plan, must be intended to distinguish between an entitlement to some share in an invested fund, the share depending on the contributions made by the employer and the employee and on the investment performance of those contributions, and a contractually fixed entitlement that is wholly independent of investment performance.

*Montgomery,* 18 F.3d at 502. The court concluded, therefore, that a mere recordation of an employee's contributions without more does not create a separate account. The court determined that "[t]he investment-performance feature of defined contribution plans is essential," and stated:

> As far as we know, there are no defined contribution plans in which the employee's only entitlement is to the return of his contributions, with everything above that going to the employer. That would be the equivalent of lending money long term at zero interest. (Shades of the old "Christmas Club" accounts, but they were for a year at the longest.)

*Id.* Instead, the court looked at the substance of the alternative form of annuity and determined:

> The alternative form did not create a hybrid consisting of a defined benefit component and a defined contribution component; it merely accelerated the payment of a portion of the annuity, a defined benefit.... The alternative form of annuity was a defined benefit plan with an acceleration feature arbitrarily tied to the employee's contributions but not on that account a defined contribution plan.

*Id.*

Turning to the case at hand, the district court adopted the report and recommendation of the magistrate judge and granted summary judgment in favor of the United States of America. The magistrate judge adopted the reasoning of the Fifth Circuit in making a recommendation in favor of the United States of America. The magistrate judge concluded that the recordation of the participant's contributions was sufficient to create a separate account for the purposes of section 414(k). Agreeing with *Guilzon,* the magistrate judge concluded that the allocation of gains and losses to the individual's account was not required in the context of section 414(k). The magistrate judge went on to conclude, however, that while the employing government agency is required to make contributions, the contributions play no part in the ultimate determination of benefits and, therefore, the benefits at issue were not derived from employer contributions as required by section 414(k). The magistrate judge in essence agreed with the analysis of *Guilzon,* although recognizing that the case is technically incorrect in concluding that no employer contributions are made pursuant to the CSRS.

■ We believe the magistrate judge was incorrect in concluding that a separate account existed for the purposes of section 414(k). Instead, we adopt the analysis of the Seventh Circuit that a separate account must maintain the characteristics of a defined contribution plan, including the allocation of gains and losses to that account. A defined benefit plan provides a benefit regardless of the contribution amount or the success of the investments. The amount of the benefit is guaranteed based on years of service and salary at time of retirement. A defined contribution plan, however, provides a benefit dependent on the investment performance of the contributions. The employee is not guaranteed any particular benefit, but rather is provided with the account balance at retirement. Section 414(k) provides that where a defined benefit plan provides a benefit based on the separate account of a participant, it

may treated as a defined contribution plan. In essence, section 414(k) creates a hybrid plan consisting of both a defined benefit and defined contribution plan. In so doing, the separate account of the participant must therefore maintain the characteristics of a defined contribution plan. Merely maintaining records to keep track of an individual's contribution does not satisfy this requirement. *See Connolly v. Pension Benefit Guar. Corp.*, 581 F.2d 729, 733 (9th Cir.1978) (holding recordation does not create a defined contribution plan in the ERISA context), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979).

Rather, the lump-sum payment in the amount of the employee's contribution was part of the defined benefit plan. The employee still received the defined benefit under the plan, just in a different manner. Instead of a basic annuity over time, the employee received a lump-sum with a reduced annuity, still resulting in a defined benefit based on years of service and salary. The fact that the contribution amount was the measure of the lump-sum does not affect the ultimate amount of the benefit as a whole. The difference merely depends on whether the former employee received the entire benefit spread out over the life of the annuity, or whether a portion was accelerated to be paid at time of retirement. The alternative form of annuity and the basic annuity are still actuarial equivalents for the annuitant.

Because the separate account requirements of section 414(k) were not met, the CSRS does not have a defined contribution plan component and the lump-sum payment may not be treated as a separate contract for the purposes of section 72. The lump-sum payment is taxable in the year received and the taxpayer is permitted to exclude from gross income a portion of each annuity pay-

ment for the return of contributions.[10] We affirm the district court, albeit for different reasons.[11]

## IV

■ Malbon also contends that the district court erred in concluding that the deemed deposit in the amount of $352 was taxable in 1987. The deemed deposit represents a credit to Malbon for the period he was a federal employee but did not contribute to the CSRS. To allow Malbon to receive credit for that time of employment, he would have been required to contribute the $352 to the Fund. Instead the Fund treated the deemed deposit as though it had actually been made. In essence, the Fund gave him credit for the time covered by the deemed deposit and treated the $352 as part of his lump-sum return of contribution. His lump-sum credit was $48,135.64, including the deemed deposit. In 1987, Malbon actually received $47,783.64 in a lump-sum payment and $22,143 as an annuity. Malbon received the credit for the period the deposit covered beginning with his annuity payments in 1987. Malbon contends that the deemed deposit is not taxable in 1987 because it was not actually received by Malbon in 1987. Instead Malbon argues that the $352 should be taxed on a prorated basis pursuant to section 72(b) instead of section 72(e) with the lump-sum payment.

The magistrate judge recommended, and the district court agreed, that the deemed deposit is taxable to Malbon in 1987 because he received an economic benefit from the deposit in that year. The magistrate judge, therefore, concluded that the deemed deposit was taxable as a lump-sum payment and taxed pursuant to section 72(e).

Malbon is correct in claiming that he did not actually receive the $352 in 1987. The

---

10. It is important to note again that the United States of America accurately represents that this case does not determine whether the taxpayer will receive a return of contributions tax free. Because the contributions came from after tax income, there is no dispute that the taxpayer does not have to pay tax on the return of contribution. Rather the question is one of timing, whether the taxpayer should receive a credit for

the contributions all at once for the lump-sum payment or over the life of the annuity.

11. Malbon argues that the legislative history mandates a different result. We, however, find the statutory language to be unambiguous, accordingly, we will not rely on the legislative history. *Fernandez v. Brock*, 840 F.2d 622, 632 (9th Cir.1988).

transaction was structured to allow Malbon to receive credit for the years served without having to actually send the payment. To require otherwise would have meant that Malbon would have sent $352 to the CSRS. Upon receipt, Malbon would have been credited for the contribution amount. The CSRS would have then sent Malbon his lump-sum payment including the $352. Instead of requiring this exchange of checks, the CSRS deemed that Malbon had paid the $352, and deemed it to be returned to him as part of the distribution. The economic substance of the transaction requires that the $352 be taxable as part of the lump-sum payment in accordance with section 72(e). *See also George*, 30 Fed.Cl. at 382 (applying the economic benefit doctrine in the context of section 72 for the purposes of including a deemed deposit in income).

**AFFIRMED.**