T.C. Memo. 1996-265


UNITED STATES TAX COURT


HAROLD E. EMMONS AND ANNA MAE EMMONS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20303-94.                    Filed June 11, 1996.


Janet I. McCurdy, for petitioners.

Alan R. Peregoy, for respondent.


MEMORANDUM OPINION


DAWSON, Judge:  This case was assigned to Special Trial
Judge Robert N. Armen, Jr., pursuant to the provisions of section
7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and
Rules 180, 181, and 183.[1]  The Court agrees with and adopts the

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable year in
issue, and all Rule references are to the Tax Court Rules of

Opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, Special Trial Judge:  Respondent determined a deficiency in petitioners' Federal excise tax under section 4980A for the taxable year 1991 in the amount of $35,308.[2]

After a concession by respondent,[3] the only issue for decision is whether the Transfer Refund distribution received by petitioner Anna Mae Emmons in 1991 from the Maryland State Employees' Retirement System is subject to the 15-percent excise tax under section 4980A as an excess distribution from a qualified plan.  The resolution of this issue turns on whether the Transfer Refund was paid from a defined benefit plan, as respondent contends, or from a defined contribution component of a defined benefit plan described in section 414(k), as petitioners contend.

This case was submitted fully stipulated under Rule 122, and the facts stipulated are so found.  Petitioners resided in Frederick, Maryland, at the time that their petition was filed with the Court.

_____

Practice and Procedure.

[2] Sec. 4980A imposes a 15-percent excise tax on excess distributions from qualified retirement plans.  This tax is included within ch. 43 of the I.R.C. and is subject to the deficiency procedures set forth in subch. B of ch. 63 of the I.R.C.  See sec. 6211(a).

[3] Respondent concedes that petitioner Harold E. Emmons is not liable for the deficiency in issue herein.  See also infra note 6.

Background

Petitioner Anna Mae Emmons (petitioner) was an employee of the Maryland State Department of Health and Mental Hygiene until her retirement, effective March 1, 1991.  As an employee of such department, petitioner was a member of the Maryland State Employees' Retirement System (the Retirement System) until she transferred to the Maryland State Employees' Pension System (the Pension System) on February 1, 1991.

The Retirement System and the Pension System

In determination letters dated April 19, 1965, and June 23, 1982, respondent determined that the Retirement System and the Pension System, respectively, were qualified trusts under section 401(a), and that they were exempt from income tax under the provisions of section 501(a).

The Retirement System requires mandatory nondeductible employee contributions.  In contrast, the Pension System does not generally require such contributions.  The State of Maryland contributes to both the Retirement System and the Pension System on behalf of the members of those systems.

All assets of the Retirement System are held in one of three funds; namely, the Annuity Savings Fund, the Accumulation Fund, and the Expense Fund.  Md. Ann. Code, art. 73B, sec. 14 (1988 and Supp. 1990).  Retirement benefits are paid from the Annuity Savings Fund and the Accumulation Fund.  Md. Ann. Code, art. 73B, sec. 14(1)(f) and (2)(a) (1988).  Expenses, other than Retirement

Benefits, are paid from the Expense Fund. Md. Ann. Code, art. 73B, sec. 14(3) (1988 and Supp. 1991).

The Annuity Savings Fund holds a participant's "accumulated contributions", which consist of the participant's total contributions plus "regular interest". Md. Ann. Code, art. 73B, secs. 1(13), (23), 14(1)(a), (2)(c) (1988 and Supp. 1990). Regular interest is credited to a participant's account annually. Md. Ann. Code, art. 73B, sec. 14(2)(c) (1988). The rate of regular interest is set by the Board of Trustees at a statutorily prescribed rate of 4 percent.[4] Md. Ann. Code, art. 73B, sec. 14(1)(a) (1988 and Supp. 1990). If a participant withdraws his or her accumulated contributions, or if such contributions are paid to the estate or designated beneficiary of a participant, such amount is paid from the Annuity Savings Fund. Md. Ann. Code, art. 73B, sec. 14(1)(f) (1988).

All interest and dividends earned on the funds of the Retirement System are credited to the Accumulation Fund. Md. Ann. Code, art. 73B, sec. 14(2)(c) (1988). Upon a participant's retirement, the participant's accumulated contributions are transferred from the Annuity Savings Fund to the Accumulation Fund, and the participant's annuity is then paid from the Accumulation Fund. Md. Ann. Code, art. 73B, sec. 14(1)(f) and

---

[4] See also Md. Ann. Code, art. 73B, sec. 1(12) (1988). Each year, after a participant's account in the Annuity Savings Fund is credited with "regular interest", such interest is transferred from the Accumulation Fund to the Annuity Savings Fund. Md. Ann. Code, art. 73B, sec. 14(2)(c) (1988).

(2)(a) (1988).  Additionally, the Accumulation Fund holds all reserves for the payment of all benefits, except for those payable from the Annuity Savings Fund.  Md. Ann. Code, art. 73B, sec. 14(2)(a) (1988).

The Transfer Refund

On January 11, 1991, petitioner elected to transfer from the Retirement System to the Pension System, effective February 1, 1991.  As a result of the election to transfer, petitioner received a distribution (the Transfer Refund) from the Retirement System in the amount of $390,513.91.  The Transfer Refund consisted of $12,460.05 in previously taxed contributions made by petitioner, $374,918.36 of earnings, $2,732.09 of employer "pick-up contributions",[5] and $403.41 of interest on the employer pick-up contributions.  The earnings, pick-up contributions, and interest on the pick-up contributions; i.e. $378,053.86, constitute the taxable portion of the Transfer Refund.

The rate of earnings paid as part of the Transfer Refund was not the rate of regular interest of 4 percent, but was an amount based on the average interest rate for the 5 years preceding the year of transfer, compounded annually.  Md. Ann. Code, art. 73B, sec. 11B(5) (1988).  The interest rate for each of the 5 years was computed as the sum of the investment income and the realized gains and losses, divided by the book value of the total investments of the Retirement System.  Id.

_____

[5] See sec. 414(h).

When petitioner transferred from the Retirement System to the Pension System, she had attained the age of 61. If petitioner had not transferred to the Pension System but had remained a member of the Retirement System, she would have been entitled to retire and receive a normal service retirement benefit, including a regular monthly annuity, at age 60. She would not have been entitled to receive a Transfer Refund because a Transfer Refund is payable only as a result of transferring from the Retirement System to the Pension System.

As a result of transferring from the Retirement System to the Pension System, petitioner became, and presently is, a member of the Pension System. As a member of the Pension System, petitioner is entitled to receive a retirement benefit based upon her salary and her creditable years of service, specifically including those years of creditable service recognized under the Retirement System. However, because petitioner received the Transfer Refund on account of transferring from the Retirement System to the Pension System, petitioner's monthly annuity is less than the monthly annuity she would have received if she had not transferred to the Pension System but had retired under the Retirement System.

In 1991, petitioner received annuity payments from the Pension System in the total amount of $6,814, of which $6,798 was the taxable amount.

Petitioners' Federal Income Tax Return

On their Federal income tax return (Form 1040) for 1991, petitioners reported the taxable portion of the Transfer Refund and the taxable portion of petitioner's annuity payments as ordinary income. In the notice of deficiency, respondent characterized petitioner's retirement distributions over $150,000 as an excess distribution from a qualified retirement plan.[6] Respondent then determined that petitioners were liable for the excise tax under section 4980A.[7]

Discussion

The only issue for decision is whether petitioners are liable for the 15-percent excise tax for an excess retirement distribution under section 4980A. The resolution of this issue turns on whether the Transfer Refund was paid from a defined benefit plan, as respondent contends, or from a defined contribution component of a defined benefit plan described in section 414(k), as petitioners contend.

---

[6] The Forms 1099-R (Total Distributions From Profit-Sharing Plans, Individual Retirement Arrangements, Insurance Contracts, Etc.) issued by the Maryland State Retirement Agency indicate that the taxable portion of the Transfer Refund was $378,585. Petitioners reported the taxable portion of the Transfer Refund on their 1991 income tax return consistent with the Forms 1099-R. Likewise, respondent determined the amount of the excess distribution based on the taxable portion reported on the Forms 1099-R. However, the parties stipulated that the taxable portion of the Transfer Refund was $378,053.86. The parties' stipulation appears to account for an error on one of the Forms 1099-R. In any event, we give effect to the stipulation.

[7] See supra note 3 regarding respondent's concession as to petitioner Harold E. Emmons.

Generally, retirement plans fall into one of two categories: (1) Defined contribution plans, and (2) defined benefit plans. A defined contribution plan is a plan under which a separate account is maintained for each plan participant and where income, expenses, gains and losses are allocated to each participant's account. Sec. 414(i).[8] Under a defined contribution plan, the employee is not guaranteed a particular benefit, but is instead provided with the account balance upon retirement. Thus, the retirement benefit provided by a defined contribution plan depends on the investment performance of the contributions made by the employer and the participant, and the participant bears the risk of loss if the plan's investments do not perform as well as expected.

A defined benefit plan is any plan that is not a defined contribution plan. Sec. 414(j). The retirement benefit provided by a defined benefit plan is fixed, typically by reference to a formula based on salary and years of service. Thus, if the plan does not perform as well as expected, the employer bears the risk of loss because the employer is contractually obligated to pay the retirement benefit specified in the plan.

---

[8] Sec. 414(i) provides:

    (i) Defined Contribution Plan.-- * * * the term "defined contribution plan" means a plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.

A defined benefit plan may contain a variable component based on investment performance.  In this respect, a defined benefit plan can, in part, resemble a defined contribution plan. In such instances, section 414(k) creates a "hybrid" plan and provides that the portion of the plan that resembles a defined contribution plan will be treated as a defined contribution plan for certain purposes.  As relevant herein, section 414(k) provides:

> (k) Certain Plans. -- A defined benefit plan which provides a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant shall --
>
> (1) for purposes of section 410 * * * be treated as a defined contribution plan,
>
> (2) for purposes of sections 72(d) * * * 411(a)(7)(A) * * * 415 * * * and 401(m) * * * be treated as consisting of a defined contribution plan to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan, and
>
> (3) for purposes of section 4975 * * * be treated as a defined benefit plan.  [Emphasis added.]

In order to satisfy the reference to "separate account" in section 414(k), the separate account must be more than a mere bookkeeping account; it must maintain the characteristics of a defined contribution plan, including the allocation of gains and losses to a participant's account.  Malbon v. United States, 43 F.3d 466 (9th Cir. 1994); Montgomery v. United States, 18 F.3d 500 (7th Cir. 1994); see Green v. Commissioner, T.C. Memo. 1994-340; but see Guilzon v. Commissioner, 985 F.2d 819 (5th Cir.

1993), affg. on other grounds 97 T.C. 237 (1991).

Section 4980A imposes a 15-percent excise tax on excess distributions from qualified retirement plans. Sec. 4980A(a). As relevant herein, an "excess distribution" is defined as the aggregate amount of the "retirement distributions"[9] with respect to any individual during any calendar year to the extent that such amount exceeds $150,000. Sec. 4980A(c)(1). The definition of an excess distribution is modified, however, for a "lump sum distribution" to which a forward averaging election under section 402(e)(4)(B) applies. Thus, as relevant herein, if the retirement distributions with respect to any individual include a lump sum distribution to which an election under section 402(e)(4)(B) applies, an "excess distribution" exists to the extent that the retirement distributions exceed $750,000; i.e., five times the amount of the limitation otherwise provided by section 4980A(c)(1). Sec. 4980A(c)(4).

For purposes of section 4980A(c), the aggregate amount of petitioner's retirement distributions was $384,851.86; i.e., $378,053.86 plus $6,798. See sec. 4980A(e)(1), (c)(2).

In view of the foregoing, what is determinative in this case

---

[9] As relevant herein, retirement distributions are defined as the amount distributed to an individual under an individual retirement plan or any "qualified employer plan" with respect to which such individual is or was the employee. Sec. 4980A(e)(1). A qualified employer plan is any plan described in sec. 401(a) that includes a trust exempt from tax under sec. 501(a). Sec. 4980A(e)(2)(A). Certain distributions are excluded in calculating an individual's aggregate retirement distributions. See sec. 4980A(c)(2).

for purposes of section 4980A is whether the Transfer Refund constituted a "lump sum distribution" within the meaning of section 402(e)(4)(A).  Petitioners contend: (1) The Transfer Refund was a lump sum distribution, (2) petitioner was entitled to and did elect forward averaging under section 402(e),[10] and (3) there was no excess distribution because petitioner's lump sum distribution and annuity payments did not exceed $750,000. Respondent contends that the Transfer Refund was not a lump sum distribution, and that there was an excess distribution to the extent petitioner's retirement distributions exceeded $150,000.

A "lump sum distribution" is defined in section 402(e)(4)(A) as follows:

> (A) Lump sum distribution.--For purposes of this section * * * , the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the <u>balance to the credit</u> of an employee which becomes payable to the recipient--
>    (i) on account of the employee's death,
>    (ii) after the employee attains age $59^1/_2$,
>    (iii) on account of the employee's separation from the service, or
>    (iv) after the employee has become disabled * * *
> from a trust which forms a part of a plan described in

_____

[10] We note that petitioners did not elect 10-year forward averaging under sec. 402(e) on their Form 1040 for 1991. Although petitioners contend on brief that they elected forward averaging on an amended return (Form 1040X), the record contains no such evidence.  Rule 143(b).  See 2 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 61.13.7, at 61-171 (2d ed. 1990); 370-2d Tax Mgmt (BNA), Qualified Plans -- Taxation of Distributions, VII, C, 1, at A-107 (2d ed. June 27, 1994).

section 401(a) and which is exempt from tax under section 501 * * * . For purposes of this subsection, the balance to the credit of the employee does not include the accumulated deductible employee contributions under the plan (within the meaning of section 72(o)(5)). [Emphasis added.]

There is no dispute that the Transfer Refund was received by petitioner after she attained the age of $59^1/_2$, nor is there any dispute that the Transfer Refund was distributed within a single taxable year. Moreover, for purposes of deciding whether petitioner received a lump sum distribution, there is no dispute that the Retirement System is a plan described in sections 401(a), and that the trust forming a part of the Retirement System is exempt from tax under section 501.

In determining a taxpayer's "balance to the credit", section 402(e)(4)(C) provides in relevant part:

(C) Aggregation of certain trusts and plans.--For purposes of determining the balance to the credit of an employee under subparagraph (A)--

(i) all trusts which are part of a plan shall be treated as a single trust, all pension plans maintained by the employer shall be treated as a single plan, all profit-sharing plans maintained by the employer shall be treated as a single plan * * * . [Emphasis added.]

This Court has previously held that section 402(e)(4)(C) requires that we treat the Retirement System and the Pension System as a single pension plan. Dorsey v. Commissioner, T.C. Memo. 1995-97; Brown v. Commissioner, T.C. Memo. 1995-93; Hoppe v. Commissioner, T.C. Memo. 1994-635; Hamilton v. Commissioner,

T.C. Memo. 1994-633; see Wheeler v. Commissioner, T.C. Memo. 1993-561; see also Sites v. United States, 75 AFTR 2d 95-2504, 95-1 USTC par. 50,280 (D. Md. 1995). Thus, as a consequence of aggregating the Retirement System and the Pension System, we have held that a taxpayer's transfer from the Retirement System to the Pension System allowed the taxpayer to receive the balance to his or her credit in two parts, an initial single payment (the Transfer Refund) and a reduced monthly annuity (based on all of the taxpayer's years of creditable service and on the taxpayer's salary during those years). Thus, we have held that a Transfer Refund did not constitute a taxpayer's entire "balance to the credit" in the Retirement and Pension Systems, and was therefore not a lump sum distribution within the meaning of section 402(e)(4)(A).

Notwithstanding the foregoing authority, petitioners contend that petitioner received the balance to her credit when she received the Transfer Refund. In this regard, petitioners argue that the Retirement System is a defined benefit plan that contains a defined contribution component, and that the Retirement System therefore constitutes a hybrid plan under section 414(k). Petitioners also argue that petitioner's mandatory contributions were held in a separate account in the Annuity Savings Fund and that the Retirement System and Pension System provided a benefit (the Transfer Refund) based partly on

the balance of petitioner's separate account. Thus, petitioners argue that, pursuant to section 414(k), petitioner's separate account in the Annuity Savings Fund should be treated as a defined contribution plan. Petitioners further argue that this defined contribution component constituted a profit-sharing plan, and that the Transfer Refund was paid from such profit-sharing plan. Finally, petitioners argue that because profit-sharing plans are not aggregated with pension plans under section 402(e)(4)(C), petitioner received the balance to her credit from a profit-sharing plan when she received the Transfer Refund.

We have carefully considered petitioners' contention, and we reject it for two reasons.

First, the Retirement System did not provide a benefit based "partly on the balance of the separate account" of petitioner under section 414(k). As discussed earlier, in order to satisfy the "separate account" requirement in section 414(k), petitioner's separate account must have maintained the characteristics of a defined contribution plan; namely, the allocation of investment gains and losses to petitioner's separate account. Here, the Annuity Savings Fund held petitioner's accumulated contributions. Pursuant to Maryland law, petitioner's account in the Annuity Savings Fund was credited with "regular interest" annually. Md. Ann. Code, art. 73B, sec. 14(2)(c) (1988). We do not think that the crediting of

statutory interest by itself creates a separate account under section 414(k) because a statutorily mandated rate of interest does not represent the investment performance of a participant's contributions. See Rev. Rul. 79-259, 1979-2 C.B. 197.[11] Consequently, the regular interest credited to petitioner's account did not create a separate account under section 414(k).[12]

Petitioners also contend that the earnings paid as part of the Transfer Refund reflected the investment performance of petitioner's contributions, and that the option to receive such earnings in a Transfer Refund constituted a benefit from a separate account. Although the rate of earnings utilized in computing the amount of the Transfer Refund was determined on a basis that considered overall gains and losses in the Retirement System, such rate considered the investment performance only for

---

[11] It is clear that revenue rulings are not binding precedent. Estate of Lang v. Commissioner, 64 T.C. 404, 406-407 (1975), affd. on this issue 613 F.2d 770, 776 (9th Cir. 1980). However, it is equally clear that we may adopt a ruling's reasoning if it is persuasive. Neuhoff v. Commissioner, 669 F.2d 291 (5th Cir. 1982), affg. 75 T.C. 36 (1980).

[12] It would appear that the Annuity Savings Fund is little more than a bookkeeping account used to keep track of a participant's accumulated contributions in the event that a participant terminates employment prior to retirement and withdraws his or her accumulated contributions. Indeed, if a participant works until retirement (and does not receive a Transfer Refund), then such participant's accumulated contributions are transferred from the Annuity Savings Fund to the Accumulation Fund in order to fund the participant's retirement annuity, and a record of a participant's accumulated contributions is no longer maintained because such information is not relevant in determining the participant's retirement benefit.

the 5 years preceding the Transfer Refund election.  Md. Ann.
Code, art. 73B, sec. 11B(5)(b) (1988).  The rate of earnings was
then applied retroactively, starting from petitioner's date of
employment, and was compounded annually as if such rate had been
actually earned during each year of service by petitioner.  Thus,
the rate of earnings utilized in computing the amount of the
Transfer Refund had no relationship to the actual earnings of
petitioner's contributions, and therefore cannot be considered a
benefit based in part on the separate account of petitioner under
section 414(k).

Second, we reject petitioners' contention because the
existence of a separate account under section 414(k) is
irrelevant for purposes of determining "the balance to the credit
of an employee" under section 402(e)(4)(A).  Section 414(k)
provides that a defined benefit plan with a defined contribution
component will be treated, in part, as a defined contribution
plan for purposes of sections 410, 72(d), 411(a)(7)(A), 415, and
401(m).  We note that section 414(k) does not specify section
402(e)(4)(C) as one of the sections for purposes of which a
defined benefit plan will be treated as a defined contribution
plan.  Therefore, even if petitioner's mandatory contributions
constituted a separate account under section 414(k), this fact
would have no effect in determining petitioner's balance to the
credit.  See Green v. Commissioner, T.C. Memo. 1994-340, wherein

the Court stated that "'the balance to the credit of an employee' was intended to include all sums payable to the employee and that there should be no separation of accounts for this purpose."

In view of the foregoing, we hold that the Transfer Refund did not constitute a lump sum distribution within the meaning of section 402(e)(4)(A) because petitioner did not receive the "balance to the credit" when she transferred from the Retirement System to the Pension System.  Accordingly, petitioners are not entitled to the increased threshold amount; i.e. $750,000, set forth in section 4980A(c)(4) in determining the amount of petitioner's excess distributions for purposes of the excise tax under section 4980A.

We now turn to petitioners' alternative argument. Petitioners contend that the Retirement System is not a "qualified employer plan" under section 4980A(e)(2) because it provides for the distribution of employee contributions and earnings thereon prior to a participant's retirement.  Thus, petitioners argue that there were no "retirement distributions" under section 4980A(e)(1) and therefore no "excess distributions" for purposes of section 4980A(a).

We have previously considered and rejected petitioners' alternative contention in <u>Montgomery v. Commissioner</u>, T.C. Memo. 1996-263.  We see no need to revisit the issue.  Therefore, for the reasons stated in <u>Montgomery v. Commissioner</u>, <u>supra</u>, we hold

that petitioner received retirement distributions under section 4980A(e)(1) in the aggregate amount of $384,851.86.

In order to give effect to our disposition of the disputed issue, as well as respondent's concession and the parties' stipulation,

Decision will be entered

under Rule 155.