T.C. Memo. 1995-501

UNITED STATES TAX COURT

JAMES E. COPLEY AND CYNTHIA R. COPLEY, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7345-93.                     Filed October 17, 1995.

James E. Copley, pro se.

Stephen J. Neubeck, for respondent.

MEMORANDUM OPINION

GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1]

Respondent determined deficiencies in petitioners' Federal income taxes for 1989 and 1990 in the respective amounts of

---

[1] All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

$5,952 and $6,471.50, and an accuracy-related penalty under section 6662(b)(1) for 1990 in the amount of $1,294.30.

After concessions,[2] the issues for decision are: (1) Whether the distribution received by petitioners from an individual retirement account (IRA) with Fidelity Magellan Fund (Fidelity) in 1990 in the amount of $16,831.81 is taxable; (2) whether petitioners are entitled to an adjustment to income in the amount of $1,614.91 attributable to petitioners' IRA distribution from Fidelity in 1990; (3) whether petitioners failed to report a distribution from the Civil Service Retirement System (CSRS) in 1990 in the amount of $464; (4) whether petitioners failed to report a distribution from the U.S. Department of Agriculture (DOA) National Finance Center in 1990 of $580; (5) whether petitioners are liable for a penalty pursuant to section 72 for premature distributions in the aggregate amount of $17,875.81 in 1990; (6) whether petitioners are entitled to rental expense deductions for 1989 and 1990 in

---

[2] Petitioners concede that: (1) They overstated their rental income for 1989 and 1990 by $400 and $898, respectively; (2) they are not entitled to rental depreciation of $14,673 for 1989; (3) they are not entitled to deduct capital losses of $3,000 for 1990; (4) they failed to report an individual retirement account distribution of $16,831.81; (5) they are not entitled to Schedule A deductions claimed in 1990 for job and miscellaneous expenses of $4,785.95, and medical expenses of $1,744.27; and (6) they are not entitled to itemize for 1990 because the standard deduction exceeds the allowable itemized deductions. Respondent concedes that petitioners repaid unemployment compensation in 1990 in the amount of $1,715 and are entitled to rental depreciation of $2,889 for 1990.

excess of the expenses allowed by respondent; (7) whether petitioners failed to report capital gain in the amount of $17,826 for 1989; and (8) whether petitioners are liable for an accuracy-related penalty under section 6662(b)(1) for 1990. For the purpose of clarity, the facts and legal analysis of each issue will be combined.

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. At the time the petition in this case was filed, petitioner James E. Copley resided in Charleston, West Virginia, and petitioner Cynthia R. Copley resided in Treasure Island, Florida. References to petitioner are to James E. Copley.

Issue 1. IRA Distribution

During 1989 and 1990, petitioner was employed by the U.S. Department of Energy (DOE) in Morgantown, West Virginia, as a project manager. In or around July 1990, petitioner left the DOE allegedly on account of "whistle-blowing" activities. At the time of his departure, petitioner was entitled to a gross distribution from the CSRS of $18,446.72. On August 13, 1990, petitioner directed that these funds be rolled over into a Fidelity IRA. For this transaction, Fidelity charged a commission of 3 percent of the amount deposited.

On August 20, 1990, the market value of the stock purchased by Fidelity for petitioner's IRA account totaled $17,893.10. On

or about October 31, 1990, petitioner withdrew the entire balance of his account ($16,831.81) and closed his Fidelity IRA. On October 31, 1990, petitioner deposited the funds withdrawn into a personal checking account with City National Bank. At the time of the withdrawal, petitioner was 41 years old.

Petitioner argues that the amount withdrawn from the Fidelity IRA is not currently taxable because Fidelity withheld the tax prior to disbursing the funds. In support thereof, petitioner points to the difference between the amount deposited in the IRA ($18,446.72) and the balance of the account at the time of the withdrawal ($16,831.81). Petitioner claims that this amount ($1,614.91) represents tax withheld. Petitioner offers no documentation to support his argument.

Under section 402(a)(1), a distribution from a qualified employee's trust is taxable to the distributee in the year of distribution. Section 402(a)(5)(A) provides an exception to the general rule for certain "rollovers" by the employee; namely, where the balance to the credit of the employee in a qualified trust is paid to him, and the employee transfers any portion of the distribution to "an eligible retirement plan" within 60 days of receipt, then the amount so distributed shall not be included in gross income. Sec. 402(a)(5)(A), (C).

Respondent does not dispute that the deposit of petitioner's lump-sum distribution into the Fidelity IRA qualifies as a tax-free rollover. However, respondent contends that petitioner's

withdrawal of the funds on or about October 31, 1990, and his deposit of the same into a personal checking account qualifies as a taxable distribution.  We agree.

The distribution that petitioner received from the CSRS is subject to taxation under section 72 pursuant to section 402(a). CSRS is a plan that meets the requirements of section 401(a), and the law is well established that section 72 is applicable to distributions received pursuant to the CSRS.  Malbon v. United States, 43 F.3d 466, 468 (9th Cir. 1994); Shimota v. United States, 21 Cl. Ct. 510, 519-520 (1990), affd. 943 F.2d 1312 (Fed. Cir. 1991); sec. 1.72-2(a)(3)(iii), Income Tax Regs.  A lump sum payment from the CSRS is treated as a payment under an annuity contract.  Roundy v. Commissioner, T.C. Memo. 1995-298; Kirkland v. Commissioner, T.C. Memo. 1994-220.  Such payment is subject to tax in the year in which it is received as a payment under an annuity contract that is "not received as an annuity" under section 72(e)(1)(A).  Guilzon v. Commissioner, 97 T.C. 237, 243 (1991), affd. 985 F.2d 819 (5th Cir. 1993).

At the time petitioner withdrew the funds from the Fidelity IRA and deposited them into his personal checking account, the funds became taxable income.  Petitioner's argument that whatever tax was due was withheld by Fidelity prior to his withdrawal of the funds is unfounded.  First, it is not the responsibility of financial institutions to withhold income taxes from savings withdrawals, and petitioner presented no documentation that such

withholding took place. Second, it is more likely than not that the difference between the amount distributed by CSRS and the amount later withdrawn by petitioner represents a combination of the 3-percent commission charged by Fidelity for establishing the account and a decline in the fair market value of the stock purchased with the IRA funds. Accordingly, respondent is sustained on this issue.

Issue 2. Adjustment to Income

On their 1990 Federal income tax return, petitioners claimed an adjustment to income for a penalty on early withdrawal of savings in the amount of $1,614.91. Petitioner argues that this amount, representing the difference between the amount deposited in his Fidelity IRA and the amount later withdrawn, was tax withheld by Fidelity.

Petitioner confuses three separate and distinct concepts: (1) The tax due on a lump-sum distribution from a qualified benefit plan under section 402(a); (2) a penalty imposed by banks on early withdrawal of savings from time savings accounts, certificates of deposits, and similar classes of deposits, and deductible under section 62(a)(9); and (3) a penalty imposed by section 72(t) on premature distributions. Petitioner appears to argue that the $1,614.91 simultaneously represents all of the above. Petitioner presented no evidence that Fidelity imposed a penalty for premature withdrawal of savings, and it is not the responsibility of financial institutions to impose and collect

the tax imposed under section 402(a) or the penalty imposed under section 72(t).  As stated above, the amount simply represents a commission charged by Fidelity and a decline in the market value of the IRA stock.  Consequently, petitioners are not entitled to an adjustment to income in the amount of $1,614.91.

Issue 3.  CSRS Distribution

Prior to trial, petitioner stipulated that he received $464 from CSRS in 1990 and that he failed to report this distribution as taxable income.  At trial, petitioner attempted to withdraw this stipulation and argued that he did not receive $464 but, instead, received $104.95 of nontaxable income.  In support of his position, petitioner presented a statement from the Office of Personnel Management (OPM) stating that petitioner's application for refund of retirement deductions had been approved, and that a check for $104.95 would be issued.  The statement indicated that the refund, consisting entirely of funds petitioner had put into the Civil Service Retirement and Disability Fund, was nontaxable.

Respondent does not dispute that the $104.95 is exempt from tax.  An Examination/Information Return Master File Transcript For Tax Year 1990 (the transcript), which lists payee entities, payer entities, information forms received (e.g., Form 1099), and types and amounts of income, indicates that petitioner received a gross distribution of $464 of taxable income from CSRS during 1990.  Although respondent did not present the Form 1099-R in question, the absence of that document appears due to the fact

that petitioner conceded this issue up until the day of trial, and then sought to withdraw his concession.

The determinations of respondent are presumed to be correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). All taxpayers are required to keep sufficient records to enable the Commissioner to determine their correct tax liability. Sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). Petitioners offered no evidence to show that respondent's determination was incorrect. We conclude that petitioner failed to report taxable income from CSRS in the amount of $464. Respondent is sustained on this issue.

Issue 4. DOA Distribution

Prior to trial, petitioner stipulated that he received and failed to report $580 of taxable income from DOA. At trial, petitioner attempted to withdraw his stipulation and argued that the $580 represents moneys borrowed from DOA which he repaid through payroll deductions. In support of his argument, petitioner presented an Earnings, Leave and Benefit Statement issued on July 12, 1990, by DOA, indicating that $79.10 had been withheld from his wages during 1990 for repayment of a thrift savings plan loan.

Petitioner offered no documentation to prove that the $580 reported by DOA to the Internal Revenue Service as taxable income

represented loan proceeds.[3]  We find that petitioner failed to report taxable income in the amount of $580 from DOA.  Respondent is sustained on this issue.

Issue 5.  Penalty for Premature Distribution

Respondent determined that petitioners were liable for a 10-percent penalty in the amount of $1,787.58 under section 72(t) on premature distributions of $16,831.81, $464, and $580 from qualified plans.  Petitioners dispute this determination.

Section 72(t) provides for a 10-percent additional tax on distributions from qualified plans, unless the distributions come within one of the statutory exceptions.  Sec. 72(t)(1) and (2). The exceptions include certain distributions: (1) Made on or after the date on which an employee attains the age of 59-1/2; (2) made to an employee after separation from service and the attainment of age 55; (3) to a beneficiary on or after the death of an employee; (4) attributable to an employee's disability; and (5) to an employee to the extent they do not exceed certain deductible medical expenses.  Sec. 72(t)(2)(A) and (B).

---

[3]  Because petitioner conceded this issue up until trial, respondent was not prepared to refute petitioner's argument with supporting documents.  Nevertheless, respondent suggests that the $580 may represent a forgiveness by DOA of an unpaid portion of a loan taken by petitioner.  As a general rule, a debtor excused from an obligation to repay must include the amount forgiven in his or her gross income.  See sec. 108.  Although we find respondent's suggestion credible, without more, we are unable to say with certainty that such a scenario is more likely than not.

Petitioner does not argue that he falls within the scope of any of the above exceptions. With respect to the distribution of $16,831.81, however, petitioner argues that Fidelity withheld the 10-percent penalty prior to distributing the balance of the account to him. As noted above, petitioner confuses the penalty for premature distribution with the penalty for early withdrawal and the tax imposed on a distribution by section 402(a). The distribution of $16,831.81 stems from a lump sum distribution from a qualified plan and a tax-free rollover into a qualified IRA. Because the distribution does not fall within the scope of any of the exceptions under section 72(t), petitioner is liable for the penalty imposed thereunder.

The transcript identified above indicates that the payments of $464 and $580 were reported to the Internal Revenue Service by the payers on Forms 1099-R. Petitioner stipulated that he received these payments from qualified plans. Thus, we conclude that the payments of $464 and $580 were received by petitioner from qualified plans. Consequently, petitioner is liable for the penalty imposed by section 72(t) on the premature distributions in the aggregate amount of $17,875.81.

Issue 6. Rental Expenses

In 1985, petitioners purchased 24583 Sunny Ridge Drive, Moreno Valley, California (the California property) and rented the property through Inland Property Management Co. (Inland). On February 1, 1989, petitioners sold the California property. On

March 31, 1983, petitioners purchased 2001 West Washington Street, Charleston, West Virginia (the Charleston property) as rental property.  Petitioners maintained the house and obtained tenants without the assistance of a management company.

With their 1989 and 1990 joint Federal income tax returns, petitioners filed Schedules E, Supplemental Income and Loss, to report their rental income and expenses.  On May 9, 1994, after respondent's notice of deficiency was issued, petitioners filed amended returns for 1989 and 1990.  The following charts show the expenses claimed by petitioners on their original and amended returns, the expenses allowed by respondent, and the amounts still in dispute after concessions.[4]

### The California Property: 1989

| Item | Per Original Return | Per Amended Return | Allowed by Respondent | Still in Dispute |
|---|---|---|---|---|
| Advertising | -0- | $60.06 | -0- | $60.06 |
| Cleaning/maint. | $366.37 | 863.13 | 258.40 | 604.73 |
| Commissions | 6,600.00 | -0- | -0- | -0- |
| Insurance | -0- | 239.00 | -0- | 239.00 |
| Legal & prof. | 1,785.04 | 615.16 | -0- | 615.16 |
| Mortg. interest | 3,558.53 | 3,558.53 | 3,420.45 | 138.08 |
| Repairs | -0- | 138.40 | -0- | 138.40 |
| Taxes | 424.00 | 424.00 | 509.04 | (85.04) |
| Utilities | 107.97 | 310.05 | 107.97 | 202.08 |
| Termite control | 265.00 | -0- | -0- | -0- |
| Home shield | 450.00 | -0- | -0- | -0- |
| Prop. mgt. | 400.00 | -0- | -0- | -0- |
| Federal Express | 14.00 | -0- | -0- | -0- |
| Miscellaneous | -0- | 14.00 | -0- | 14.00 |
| Pool service | -0- | 629.50 | -0- | 629.50 |

---

[4]   The information on these charts is largely derived from respondent's Statement of Issues and Facts filed on the day of trial.

| | | | |
|---|---|---|---|
| Depreciation | 14,969.00 | 296.00 | 296.00 | -0- |
| Total | 28,939.91 | 7,147.83 | 4,591.86 | 2,555.97 |

### The Charleston Property: 1989

| Item | Per Original Return | Per Amended Return | Allowed by Respondent | Still in Dispute |
|---|---|---|---|---|
| Advertising | $55.00 | $55.44 | $55.00 | -0- |
| Auto expense | 3,327.07 | 5,854.92 | 5,854.92 | -0- |
| Insurance | 239.00 | 155.00 | 239.00 | (84) |
| Legal & prof. | 1,078.04 | 2,043.21 | 2,043.21 | -0- |
| Mortg. interest | 5,857.21 | 5,857.21 | 5,857.21 | -0- |
| Repairs | 2,782.94 | 7,084.75 | 7,084.75 | -0- |
| Taxes | 200.00 | 214.03 | 214.03 | -0- |
| Utilities | 2,461.25 | 4,188.37 | 4,188.37 | -0- |
| Wages & salaries | -0- | 216.00 | 215.00 | 1 |
| Miscellaneous | 748.23 | 9,821.24 | 6,931.24 | 890 |
| Depreciation | 2,248.00 | 2,889.00 | 2,889.00 | -0- |
| Total | 18,996.74 | 38,379.17 | 35,571.73 | 807 |

### The Charleston Property: 1990

| Item | Per Original Return | Per Amended Return | Allowed by Respondent | Still in Dispute |
|---|---|---|---|---|
| Advertising | -0- | $51.54 | $26.84 | $24.70 |
| Auto expense | $2,507.67 | 5,503.09 | 2,690.69 | 2,812.40 |
| Insurance | 155.00 | 155.00 | 155.00 | -0- |
| Legal & prof. | 432.00 | 2,635.05 | 2,635.05 | -0- |
| Mortg. interest | 6,503.89 | 6,503.89 | 6,503.89 | -0- |
| Repairs | 4,112.10 | 5,487.10 | 5,487.10 | -0- |
| Taxes | 220.00 | 435.43 | 435.43 | -0- |
| Utilities | 3,837.35 | 5,503.09 | 5,503.09 | -0- |
| Telephone | 587.75 | -0- | 1,342.33 | (1,342.33) |
| Miscellaneous | -0- | 8,331.42 | -0- | 8,331.42 |
| Meals | -0- | -0- | 662.73 | (662.73) |
| Depreciation | 2,248.00 | 2,889.00 | 2,889.00 | -0- |
| Total | 20,603.76 | 37,494.61 | 28,331.15 | 9,163.46 |

Section 62(a)(4) allows the deduction of expenses attributable to property held for the production of rents or royalties.  Deductions are a matter of legislative grace, and the

taxpayer bears the burden of proving that he or she is entitled to any deduction claimed.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  This includes the burden of substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

In support of the items remaining in dispute with respect to the California property, petitioner introduced an invoice titled "Trial Balance".  The invoice, dated January 27, 1989, and created for petitioner by Inland, lists income and expenses attributable to the California property.  Petitioner testified that several of the items on the invoice are incorrect, and based on the lack of available receipts or other supporting documents, we are unable to determine whether the expenses were actually paid, and, if so, in which year (1988 or 1989).

With respect to the Charleston property, petitioner offered no receipts, travel logs, or other documentation to substantiate the items still in dispute, other than handwritten schedules and lists of expenses prepared for trial.  Despite the fact that petitioners filed amended returns as late as May 1994, 1 month before trial, they were unable to provide any credible evidence to support the deductions claimed.  Furthermore, several of the items in dispute, if in fact purchased, would be in the nature of improvements with an expected life greater than 1 year, and the costs associated therewith must be capitalized and depreciated pursuant to statutorily prescribed limits.  The testimony of

petitioner regarding all of the expenses in dispute was for the most part general, vague, conclusory, uncorroborated, and questionable.  Under these circumstances, we are not required to, and we do not, accept such testimony to support the positions of petitioners herein.  Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159.  The determination of respondent is sustained as to rental expenses claimed in 1989 and 1990.

Issue 7.  Capital Gain

Petitioners sold the California property on February 1, 1989, for $110,000.  With their original 1989 Federal income tax return, petitioners filed a Form 2119 with the following information:

| | |
|---|---:|
| Selling price of home | $110,000.00 |
| Expense of sale | 9,514.04 |
| Amount realized | 100,485.96 |
| Basis of home sold | 107,037.40 |
| Gain on sale | (6,551.44) |

In response to the query "If you haven't replaced your home, do you plan to do so within the replacement period?" petitioners answered in the affirmative.

In the notice of deficiency, respondent determined that petitioners miscalculated the gain on the sale of the California property.  Respondent's computation is as follows:

| | | |
|---|---:|---:|
| Selling price of home | $110,000 | |
| Expense of sale | 9,514 | |
| Amount realized | | $100,486 |

| | | |
|---|---|---|
| Cost | 116,096 | |
| Less depreciation | 36,536 | |
| Adjusted basis | | 79,560 |
| Gain on sale | | 20,926 |
| Capital loss carryover (from 1987) | | 3,100 |
| Taxable gain | | 17,826 |

After the notice of deficiency was issued, petitioners filed an amended return for 1989 with an amended Form 2119, wherein they recomputed their gain on the sale of the California property as follows:

| | |
|---|---|
| Selling price of home | $110,000 |
| Expense of sale | 9,514 |
| Amount realized | 100,486 |
| Basis of home sold | 84,341 |
| Gain on sale | 16,145 |

Petitioners also reported that they had not replaced their home and did not plan to do so within the replacement period.

At trial, petitioner presented a more detailed calculation of the gain realized, indicating that the difference between the gain determined by respondent and that calculated by petitioners results from (1) a difference of $549.09 in the original cost of the property, (2) a difference of $1,212.75 in the depreciation of the property, and (3) an alleged loan of $4,700 that petitioner subtracted from the selling price to arrive at the amount realized.

Petitioner provided no evidence to explain the discrepancies in cost or depreciation, other than his own testimony that he claimed excess depreciation intentionally. With respect to the "loan" of $4,700, petitioner testified that he borrowed the money

from Brenda Summers, a friend of the family.  He presented no loan documents or credible proof of repayment.  Accordingly, petitioners have failed to prove that respondent's determination regarding the gain realized is incorrect.

In the alternative, petitioner argues that the gain realized on the sale of the California property should not be recognized in 1989 pursuant to section 1034.  Respondent contends that petitioners are not entitled to deferral because the California property was rented out beginning in 1985, which was more than 3 years prior to the date on which the property was sold.

Generally, sections 1001 and 61 require a taxpayer to recognize in the year of the sale gain realized on the sale of property.  Section 1034, however, allows a taxpayer, in certain circumstances, to defer recognition of gain realized on the sale of the taxpayer's principal residence.  Under section 1034, if the taxpayer purchases a new principal residence within the replacement period, the taxpayer will recognize gain on the sale only to the extent that the taxpayer's adjusted sale price of the old residence exceeds the taxpayer's cost of purchasing the new residence.  Sec. 1034(a).

As noted above, petitioner presented a statement at trial which explains the process he used to arrive at the gain realized on the California property.  In particular, he calculated a total of $35,320 in depreciation as follows:

| Year | Amount of Depreciation |
|------|------------------------|
| 1985 | $2,906 |
| 1986 | 13,374 |
| 1987 | 12,225 |
| 1988 | 6,364 |
| 1989 | 451 |
| Total | 35,320 |

Such figures would seem to indicate that petitioners did, in fact, rent out the California property beginning in 1985. Petitioner's testimony that he resided at that address from 1985 through 1988 while working at General Dynamics was uncorroborated and questionable. Under such circumstances, petitioners have failed to establish that the property was ever used as their principal residence, or that even if it were, that such use was not abandoned long before the property was sold. See Stolk v. Commissioner, 40 T.C. 345 (1963), affd. per curiam 326 F.2d 760 (2d Cir. 1964). We are unable, moreover, to determine with any degree of certainty the location of petitioners' new residence after the sale of the California property in 1989.

On their 1989 Federal income tax return, petitioners listed their address as "P.O. Box 4353, Star City, West Virginia, 26504" (the Star City address), and a Form 1099-INT attached to their return listed petitioners' residence as "500-6 Village Park Drive, Morgantown, West Virginia, 26505" (the Morgantown address). On their amended 1989 return, petitioners listed their residence in 1989 as the Charleston property. On their 1990 Federal income tax return, petitioners listed their home address

as the Charleston property; however, the Form 4562, Depreciation and Amortization, attached to their return, listed the Charleston property as being used 100 percent for rental purposes. On the Form W-2, DOA lists petitioners' residence as the Star City address.

Even assuming, arguendo, that for purposes of section 1034 petitioners' old residence was the California property and their new residence was the Charleston property, petitioners would not qualify for a deferral under section 1034. Petitioner testified that he sold the California property on February 1, 1989, and purchased the Charleston property on March 31, 1983. Consequently, petitioners would not be permitted to defer the gain because they did not purchase the Charleston property within 2 years before or after the date on which they sold the California property. The time requirement of section 1034(a) must be strictly complied with. Bayley v. Commissioner, 35 T.C. 288 (1960). If the Morgantown property was petitioners' new residence, petitioners are also not entitled to deferral under section 1034 because they offered no evidence regarding the date the Morgantown property was purchased or how much they paid. Respondent is sustained on this issue.

Issue 8. Addition to Tax

The final issue for decision is whether petitioners are liable for an accuracy-related penalty for the taxable year 1990. Section 6662(a) and (b)(1) imposes an accuracy-related penalty

equal to 20 percent of the portion of any underpayment of tax that is due to negligence.  Under section 6662(c), negligence is any failure to make a reasonable attempt to comply with the provisions of the Code.

Based on petitioners' amended returns filed after the notice of deficiency was issued and immediately before trial, wherein they adjusted the amount of nearly every item of expense claimed on their original returns, and based on petitioners' failure to provide credible substantiation or authority for any of the items at issue in this case, we find that petitioners are liable for the penalty under section 6662(b)(1) for 1990.  Respondent is sustained on this issue.

At trial, petitioner made an oral motion for discovery requesting copies of the revenue agent's workpapers resulting from the administrative examination of his 1988 and 1989 Federal income tax returns.  Petitioner also sought an explanation as to why his returns were selected for examination.  Under Rule 70(b)(1), information sought through discovery may concern any matter not privileged and which is relevant to the subject matter involved in the pending case.  However, discovery "shall be completed, unless otherwise authorized by the Court, no later than 45 days prior to the date set for call of the case from a trial calendar."  Rule 70(a)(2).  This case was first called for trial on May 12, 1994.  Petitioner did not move for discovery until the case was recalled for trial at a special session held

in Washington, D.C., on June 13, 1994.  Under our Rules, petitioner's motion is untimely and will be denied.[5]

Furthermore, we generally will not look behind a notice of deficiency to examine it for the motives or methods which were used by the Commissioner in arriving at the deficiency determination.  Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974); Senter v. Commissioner, T.C. Memo. 1995-311. Petitioner has not made any showing that information concerning the method by which respondent selected and examined petitioner's returns for 1988 and 1989 is relevant to the subject matter of this case, or is calculated to lead to discovery of admissible evidence.

To reflect the foregoing,

> An appropriate order denying petitioners' motion for discovery will be issued, and decision will be entered under Rule 155.

---

[5]    Petitioner filed a Memo to the Court on May 23, 1994, requesting that the Court order respondent to produce and turn over to petitioner documents relating to the examination of petitioners' returns.  We do not recognize this Memo as a formal discovery motion; however, had we done so, the request would also have been untimely under Rule 70(a)(2).