**Robert and Carole ZACKIM, Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

No. 89–1211.

United States Court of Appeals, Third Circuit.

Argued July 24, 1989.

Decided Oct. 13, 1989.

James I.K. Knapp, Acting Asst. Atty. Gen., Gary R. Allen, David English Carmack (argued), Linda E. Mosakowski, Attorneys—Tax Div., Dept. of Justice, Washington, D.C., for appellant.

James J. Mahon (argued) (Arnold Y. Kapiloff, Walker, Walker & Kapiloff, P.C., of counsel), New York City, for appellees.

Before GIBBONS, Chief Judge, HUTCHINSON, Circuit Judge, and WOLIN, District Judge.*

## OPINION OF THE COURT

GIBBONS, Chief Judge:

The Commissioner of Internal Revenue appeals from a decision of the Tax Court determining that there was no deficiency in taxes of taxpayers Robert and Carole Zackim for the tax year 1979. The Commissioner's notice of deficiency for that year asserted that they owed deficiencies in income tax and additions to tax for that year due to fraud. A majority of the Tax Court held that the Commissioner was precluded from asserting a deficiency for 1979 based on fraud by the doctrine of *res judicata,* because an earlier decision in the Tax Court had been entered reflecting a settlement of an earlier notice of deficiency for that year. We will reverse.

---

* Honorable Alfred M. Wolin, United States District Judge for the District of New Jersey, sitting by designation.

## I.

### Tax Court Proceedings

On May 27, 1982 the Commissioner issued a notice of deficiency of $559 for the tax year 1979, in which he asserted that the Zackims failed to report $2,059 in interest income. The Zackims filed a timely petition to the Tax Court claiming that the interest income belonged not to them but to Mary Zackim. The 1982 notice of deficiency was subsequently referred to the Appeals Office of the Internal Revenue Service for settlement discussions. On October 23, 1985, as a result of a settlement, a decision was entered in the Tax Court upholding the Commissioner's determination that a deficiency of $559 was due for 1979.

Meanwhile, the Internal Revenue Service was investigating possible criminal charges against the Zackims for the tax years 1978, 1979, and 1980. The claimed deficiencies involved in that investigation arose out of unreported income other than the $2,059 in interest which was the subject of the May 27, 1982 notice of deficiency.[1] On November 19, 1984 the Zackims' counsel had a conference in New York City with Valerie Volesko of the Manhattan District Counsel Office, relating to a criminal referral made by the Internal Revenue Service Criminal Investigation Division for the Zackims' 1978, 1979, and 1980 tax years. On December 5, 1984 Ms. Volesko wrote to taxpayers' counsel, informing him that Mr. Zackim's case had been referred to the Department of Justice for prosecution. In September 1985 the Zackims' counsel informed the Appeals Office of Internal Revenue that Mr. Zackim was under investigation by the Criminal Investigation Division. The Appeals Office relayed this information to the district counsel attorney who was handling the Tax Court petition on the May 27, 1982 notice of deficiency. As noted above, that petition was disposed of by a Tax Court decision on October 23, 1985.

---

1. Zackim cashed customer checks under the alias Robert Dunn and failed to report income therefrom in amounts of $13,109 for 1978; $18,687 for 1979, and $18,593 for 1980.

On November 27, 1985 a grand jury returned an indictment charging Mr. Zackim with one count of tax evasion, 26 U.S.C. § 7201 and one count of tax fraud, 26 U.S.C. § 7206(1) for each of the years 1978 through 1980. That indictment was disposed of when Mr. Zackim pled guilty, on February 10, 1986, to one count of violating section 7206(1) for each of the years 1978 through 1980.

Thereafter, in a statutory notice of deficiency issued November 14, 1986, the Commissioner determined deficiencies in the Zackims' federal income tax and additions to tax for fraud, 26 U.S.C. § 6653(b), as follows:

| Year | Deficiencies | § 6653(b) addition |
|------|-------------|-------------------|
| 1978 | $3,795 | $1,898 |
| 1979 | 6,868 | 3,434 |
| 1980 | 6,727 | 3,364 |

The Zackims filed a timely notice of deficiency, and the parties stipulated to all relevant facts. They agreed that Carole Zackim was an innocent spouse within the meaning of 26 U.S.C. § 6013(e). Mr. Zackim admitted that he was liable for the deficiencies and additions to tax as calculated by the Commissioner for the years 1978 and 1980, and those deficiency notices for those years have been settled. For the tax year 1979 the parties stipulated that the underpayment determined by the Commissioner was due to fraud, and that if the Commissioner could issue a deficiency notice Mr. Zackim would owe a $6,868 deficiency and a $3,434 addition to tax. Thus the sole issue presented to the Tax Court was whether under the stipulated facts the Commissioner was prohibited from issuing a second statutory notice of deficiency for the tax year 1979.

## II.

### The Tax Court Decision

In a reviewed decision the Tax Court produced three opinions. A majority and concurring opinion decided in favor of the Zackims. Two judges dissented.

The Tax Court majority held that where, as here, fraud is discovered prior to the first Tax Court decision for the relevant tax year, the taxpayer may assert in the Tax Court an affirmative defense of *res judicata* to the second notice of deficiency. The majority construed 26 U.S.C. § 6212(c), quoted below, to mean that Congress intended to override the common law rule of *res judicata* only if fraud was discovered by the government after the entry of the first Tax Court decision for the tax year in issue.

Three judges concurred but proposed a different rule. Under their proposed rule, if the first Tax Court trial has been concluded when the fraud is discovered, the Commissioner has discretion to amend the first notice of deficiency or to issue a second notice of deficiency after the first decision. If, on the other hand, fraud is discovered, as here, well in advance of the Tax Court trial on the first deficiency notice, the Commissioner must apply to the Tax Court for leave to amend the first notice. In either event, according to the concurring judges, the Tax Court has discretion to refuse the amendment and allow a second notice of deficiency. Because no application was made for leave to amend the first notice of deficiency for 1979, *res judicata* barred the second notice.

The dissenting judges, relying on 26 U.S.C. § 6501(c)(1) and (2), argued that Congress has placed no limitation on when the Commissioner may assess a fraud deficiency. They urged, as well, that even if *res judicata* applies, the Tax Court decision may preclude the Commissioner only if the claim raised in the second proceeding was actually litigated or settled in the former proceeding. Because the question of fraud had neither been raised, negotiated, nor litigated, the Commissioner should not be precluded from pursuing that cause of action against the Zackims.

## III.

### Analysis

If the Tax Court *res judicata* holding is to be upheld, it must be on the basis of claim preclusion rather than issue preclusion (collateral estoppel) for it is clear that the Tax Court decree did not litigate the taxpayer's alleged 1979 fraud, or indeed his

receipt of the income on which the fraud claim rests. At least since *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), claim preclusion for Tax Court decisions has been recognized to apply to subsequent claims arising out of the same tax year. The question is whether it applies to this case.

■ Our starting point on this as on any other issue of non-constitutional law is the language of the governing statute. The statute most directly relevant here is 26 U.S.C. § 6212(c), which provides:

> (1) If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), the Secretary shall have *no right to determine any additional deficiency of income tax for the same* taxable year, ... with respect to any act (or failure to act) to which the petition relates, *except in the case of fraud,* and except as provided in section 6214(a) (relating to assertion of greater deficiencies before the Tax Court), in section 6213(b)(1) (relating to mathematical or clerical errors), in section 6851 or 6852 (relating to termination of assessments), or in section 6861(c) (relating to the making of jeopardy assessments).

(emphasis supplied). The italicized language establishes two things. First, Congress has established claim preclusion for Tax Court decisions by providing that once a petition is filed following a notice of deficiency, the Commissioner (with limited exceptions) loses the opportunity to seek additional tax for the same year. Second, Congress has expressly excluded from its definition of claim preclusion claims based on fraud.

The fraud exception in this statute defining Tax Court claim preclusion must be read in light of, first, the absence of any statute of limitations on an assessment based on tax fraud, 26 U.S.C. § 6501(c)(1), and second, the presence of a six-year statute of limitations on criminal prosecution for such fraud. 26 U.S.C. § 6531. It must be read, as well, in light of congressional

knowledge that taxpayers facing a possible criminal prosecution for tax fraud have, and are likely to assert, a constitutionally protected privilege against self-incrimination. Finally, it must be read in light of the general three-year time bar in 26 U.S.C. § 6501(a) on civil assessment and collection of taxes.

These provisions in combination have shaped the practices of the Internal Revenue Service with respect to fraud claims. Ordinarily, when the Commissioner recommends criminal prosecution for tax fraud, civil collection efforts cease. *See Badaracco v. Commissioner,* 464 U.S. 386, 399, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984). In most instances, a criminal prosecution will encompass all or most of the tax deficiencies in dispute, such that the government's interest in prosecuting the criminal violation will outweigh its interest in tax collection. If the prosecution is successful, the taxpayer will be collaterally estopped, in a subsequent Tax Court case or in a District Court suit for a refund, from contesting the fraud. In other instances, perhaps rare, there may be claims for additional taxes, not based on fraud, which could be collected without the likelihood of assertion of the privilege against self-incrimination. Finally, in other instances, a notice of deficiency and a Tax Court petition will have resulted in a Tax Court decision before the government even discovers the fraud.

The Tax Court majority concedes, as it must, that in the last mentioned instance, given the language of section 6212(c), there is simply no possibility of claim preclusion on the fraud claim. In the first mentioned instance no claim preclusion question can arise. The claim preclusion question can only arise in those rare instances in which the government discovers a possible fraud claim before a final decision is entered on a Tax Court petition involving an ordinary deficiency.

The equivalent of section 6212(c) has been a part of the Internal Revenue Code since 1926. The Senate Report on the 1926 version discusses the question of claim preclusion of Tax Court decisions, noting:

But if [the taxpayer] does elect to file a petition with the Board his entire tax liability for the year in question (except in case of fraud) is finally and completely settled by the decision of the Board when it has become final, whether the decision is by findings of fact and opinion, or by dismissal, as in case of lack of prosecution, insufficiency of evidence to sustain the petition, or on the taxpayer's own motion. The duty of the Commissioner to assess the deficiency thus determined is mandatory, and no matter how meritorious a claim for abatement of the assessment or for refund he can not entertain it, nor can suit be maintained against the United States or the collector. Finality is the end sought to be attained by these provisions of the bill, and the committee is convinced that to allow the reopening of the question of the tax for the year involved either by the taxpayer or by the Commissioner (*save in the sole case of fraud*) would be highly undesirable.

S.Rept. No. 52, 69th Cong., 1st Sess 26 (1926), (emphasis supplied). Both the statutory language and its legislative history are clear. Congress dealt explicitly with the policy of finality, and plainly excepted claims of fraud from that general policy.

Despite the plain language of the statute, the Tax Court majority opinion concludes that it means less than it says. The majority relies on language in the same Senate Report:

If the fraud is discovered after the Board's decision, the Commissioner can send notice thereof, on which the taxpayer can appeal to the Board.

*Id.* at 28. Drawing from this language the negative inference that the Commissioner cannot send a second notice in any other instance, the Tax Court majority reasons that Congress intended only a limited exception to the otherwise applicable common law doctrine of *res judicata*.

The Tax Court majority has put the cart before the horse, we think, by starting with the assumption that Congress intended common law principles of *res judicata* to apply to the Board of Tax Appeals, which

in 1926 was generally regarded as an administrative agency rather than an Article I court. Be that as it may, the fact is that Congress dealt explicitly with what we now commonly refer to as claim preclusion when it enacted section 6212(c), which consciously excludes from claim preclusion government claims for tax fraud. There simply is no warrant for going behind the plain language of section 6212(c) and adding to the language "except in the case of fraud" the unintended language "discovered after the Tax Court decision." Certainly the 1926 Senate Report does not suggest such an addition.

The position of the concurring judges in the Tax Court is even less defensible. They would transfer to the Tax Court the decision whether the government should proceed civilly while a criminal tax fraud investigation is pending. This decision involves the delicate relationship between the Internal Revenue Service and the Department of Justice with respect to such investigations, a relationship which is highly regulated in the interests both of revenue collection and of fairness to taxpayers. The Tax Court simply has no place in it.

■ Finally, even if we were to read the 1926 enactment carried forward in section 6212(c) as requiring common law principles of *res judicata* to apply in this case, those principles would not require preclusion. As noted at the outset of Part III above, this case does not involve issue preclusion or collateral estoppel. Claim preclusion, moreover, applies only if the claims are in fact the same. *See United States v. Athlone Indus., Inc.,* 746 F.2d 977 (3d Cir. 1984). The relationship between the fraud claim and the deficiency case the parties settled by stipulation in the Tax Court is too attenuated to invoke claim preclusion. In only one sense are these claims similar: the deficiencies in issue are for the same year. The alleged deficiencies are in all other respects distinct. Revolving around an entirely separate set of disputed funds, the government's claim of fraud involves different transactions, different facts, and different evidence. *Id.* at 984. Moreover, the statute defining these deficiencies—in-

deed, the entire structure of the Internal Revenue Code—establishes that the government's claim of fraud is a distinct cause of action from a claim of ordinary deficiency. Thus even if section 6212(c) left room for common law claim preclusion, it would not dictate preclusion in this case.[2]

### IV.

### Conclusion

The decision of the Tax Court with respect to the petition for the 1979 tax year will be reversed.

---

**2.** We note that the stipulation in the deficiency case did not expressly refer to the fraud claim.