130 T.C. No. 2

UNITED STATES TAX COURT

ESTATE OF DUANE B. FARNAM, DECEASED, MARK D. FARNAM, PERSONAL
REPRESENTATIVE, AND ESTATE OF LOIS L. FARNAM, DECEASED, MARK D.
FARNAM, PERSONAL REPRESENTATIVE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3575-06.                    Filed February 4, 2008.

        <u>Held</u>:  For purposes of the liquidity test of sec.
2057(b)(1)(C), I.R.C. (relating to estate tax
deductions under sec. 2057(a), I.R.C., for certain
qualified family-owned business interests), decedents'
loans to their family-owned corporation are not treated
as "interests" in the corporation.

Sue Ann Nelson and Robert J. Stuart, for petitioners.

Blaine Holiday, for respondent.

OPINION

SWIFT, Judge:  Respondent determined deficiencies of $763,131 and $1,491,616 in the Federal estate tax of the estates of decedents Duane B. Farnam (DBF Estate) and Lois L. Farnam (LLF Estate), respectively.

The issue for decision is whether, for purposes of the liquidity test of section 2057(b)(1)(C), decedents' loans to their family-owned corporation are to be treated as "interests" in the corporation.

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as in effect for the dates of decedents' deaths, and all Rule references are to the Tax Court Rules of Practice and Procedure.[1]

## Background

The facts of this case have been submitted fully stipulated under Rule 122 and are so found.

At the times of their deaths, decedents Duane B. Farnam and Lois L. Farnam were residents of Otter Tail County, Minnesota. At the time of filing the petition, decedents' estates' personal representative resided in Fargo, North Dakota.

---

[1] Although decedents died in different years--2001 and 2003--the relevant Code provisions for both years are in all material respects the same.

For many years, decedents owned and (with other members of the Farnam family) managed Farnam Genuine Parts, Inc. (FGP), a Minnesota corporation. Prior to its incorporation in 1981, decedent Duane B. Farnam owned and operated the business as a sole proprietorship.

Throughout its existence, FGP operated retail and wholesale stores in Minnesota, North Dakota, and South Dakota that sold automobile parts, retail and wholesale, to individuals, farms, tire stores, automobile repair shops, gasoline service stations, and construction and industrial companies.

Starting in 1981 and every year thereafter, members of the Farnam family, including decedents, and entities owned by members of the Farnam family lent funds to FGP. FGP used the borrowed funds in its business operations. Over the years, to substantiate and to document the loans, FGP issued promissory notes (FGP notes) in favor of the Farnam family members and related entities from whom the borrowed funds were received.

The FGP notes were unsecured and subordinate to claims of FGP's outside creditors. Initially, FGP paid principal but not interest on the borrowed funds, but from 1984, in response to new tax laws, FGP made annual payments of principal and interest on the FGP notes. The parties stipulate that the FGP notes are to be treated as legitimate and enforceable FGP debt obligations.

In 1995, decedents formed the Duane B. Farnam Limited Partnership (Duane LP) and the Lois L. Farnam Limited Partnership (Lois LP). Decedents were each partners of Duane LP and Lois LP, and decedents contributed to these two partnerships their ownership interests in 10 buildings and in several of the FGP notes. The primary business of each of the partnerships was to own, maintain, and lease buildings to FGP for use as automobile parts stores.

On formation, decedents Duane and Lois Farnam owned 99 percent and 1 percent, respectively, of Duane LP, contributing property with values of $2,259,328 and $22,822, respectively, to the capital of Duane LP.

On formation, decedents Duane and Lois Farnam owned 1 percent and 99 percent, respectively, of Lois LP, contributing property with values of $30,622 and $3,031,528, respectively, to the capital of Lois LP.

On September 6, 2001, decedent Duane Farnam passed away. On June 23, 2003, decedent Lois Farnam passed away.

At the time of decedent Duane Farnam's death in 2001, decedents each individually owned 50 percent of the 1,000 outstanding shares of FGP voting common stock, and Mark Farnam, decedents' only son and personal representative, owned all of the 99,000 outstanding shares of FGP nonvoting common stock. In addition, decedent Duane Farnam owned a 99-percent capital

interest, and Mark Farnam owned a 1-percent capital interest in Duane LP.

At the time of her death in 2003, decedent Lois Farnam and Mark Farnam each owned 50 percent of the 1,000 outstanding shares of FGP voting common stock, and Mark Farnam continued to own all of the 99,000 outstanding shares of FGP nonvoting common stock. In addition, decedent Lois Farnam owned a 92.72-percent capital interest in Lois LP, and Mark Farnam and his wife and two children owned the remaining 7.28-percent capital interest in Lois LP.

On behalf of the DBF and LLF Estates, there were timely filed Federal estate tax returns on which were claimed qualified family-owned business interest (QFOBI) deductions under section 2057 of $625,000 and $675,000, respectively. On the Federal estate tax returns, the common stock in FGP and the FGP notes decedents owned at the times of their deaths (directly and through their controlled partnerships) were included in the respective decedents' gross estates and in the calculation of the QFOBI 50-percent liquidity test of section 2057(b)(1)(C). The parties have stipulated the values of decedents' stock interests in FGP and the values of decedents' FGP notes.

On or about November 29, 2005, respondent issued statutory notices of deficiency determining the above Federal estate tax deficiencies and disallowing the claimed QFOBI deductions.

The parties have stipulated that if the FGP notes are to be treated as QFOBIs, the adjusted values of the QFOBIs decedents owned will constitute approximately 80 percent and 56 percent, respectively, of the adjusted gross estates of decedents Duane B. Farnam and Lois L. Farnam, the 50-percent liquidity test of section 2057(b)(1)(C) therefore will be satisfied, and petitioners will be entitled to the claimed $625,000 and $675,000 QFOBI deductions.  If the FGP notes are not to be treated as QFOBIs owned by decedents, the adjusted values of the QFOBIs will constitute approximately 44 percent and 24 percent, respectively, of decedents' adjusted gross estates, the 50-percent liquidity test of section 2057(b)(1)(C) therefore will not be satisfied, and petitioners will not be entitled to the claimed $625,000 and $675,000 QFOBI deductions.

## Discussion

The issue before us presents a difficult question of statutory interpretation.  Petitioners and respondent each scrutinize carefully the language of section 2057, the legislative history, and the use of similar language elsewhere in the Code.

The question of statutory interpretation at issue focuses particularly on language from section 2057(e)(1)(B)--namely, "an interest in an entity" carrying on a trade or business.

Petitioners contend that (as long as the family ownership test of section 2057(e)(1)(B)(i) and (ii) is met), for purposes of meeting the 50-percent liquidity test of section 2057(b)(1)(C), an "interest" in a family corporation or partnership may include not only equity ownership interests but also loan interests.

Respondent contends that, for purposes of meeting the 50-percent liquidity test of section 2057(b)(1)(C), an "interest" in a family corporation or partnership does not include a loan interest in the family corporation.[2]

We begin our analysis with the language and structure of the statute itself. Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835 (1990); United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997); Allen v. Commissioner, 118 T.C. 1, 7 (2002).

In interpreting a statute, our purpose is to give effect to Congress's intent. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-843 (1984); Iowa 80 Group, Inc. v. IRS, 406 F.3d 950, 952 (8th Cir. 2005); Fernandez v. Commissioner, 114 T.C. 324, 329 (2000). If the language of a statute is plain and unambiguous, the function of the Court is to apply the statute according to its terms. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240-241 (1989). If the

---

[2] Respondent's position is also stated in Tech. Adv. Mem. 200410002 (Nov. 6, 2003).

statute is ambiguous, as section 2057 clearly is, we look to the statute's legislative history and other authorities for assistance in determining legislative intent. Burlington N. R.R. v. Okla. Tax Commn., 481 U.S. 454, 461 (1987); Fernandez v. Commissioner, supra at 329-330.

Section 2057(a) allows an estate tax deduction from the value of a gross estate of up to $675,000 for the value of QFOBIs a decedent owned at the time of death.[3]

Section 2057(a) provides in part as follows:

SEC. 2057.  FAMILY-OWNED BUSINESS INTERESTS.

(a)  General Rule.--

(1) Allowance of deduction.--For purposes of the tax imposed by section 2001, in the case of an estate of a decedent to which this section applies, the value of the taxable estate shall be determined by deducting from the value of the gross estate the adjusted value of the qualified family-owned business interests of the decedent which are described in subsection (b)(2).

---

[3] The qualified family-owned business interest (QFOBI) allowance was first enacted in the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 502, 111 Stat. 847, as a tax exclusion under sec. 2033A.  In 1998, the QFOBI provision was moved to sec. 2057 and was converted from a tax exclusion to a tax deduction. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 6007(b), 112 Stat. 807.  Notwithstanding this conversion from an exclusion to a deduction, sec. 2057 is substantially the same as former sec. 2033A.  The Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. 107-16, sec. 521(d), 115 Stat. 72, repealed sec. 2057 for estates of decedents dying after Dec. 31, 2003.  In the absence of intervening estate tax legislation, sec. 2057 is scheduled to be reinstated for estates of decedents dying after Dec. 31, 2010.  Id. sec. 901(a) and (b), 115 Stat. 150.

(2) Maximum deduction.--The deduction allowed by this section shall not exceed $675,000.

Generally, under section 2057(b)(1)(C), for an estate to qualify for a QFOBI deduction, the value of the QFOBIs owned by a decedent at the time of death must exceed 50 percent of the total value of the decedent's adjusted gross estate--the so-called 50-percent liquidity test.  Section 2057(b)(1)(C) provides as follows:

SEC. 2057.  FAMILY-OWNED BUSINESS INTERESTS.

(b)  Estates to Which Section Applies.--

(1)  In general.--This section shall apply to an estate if--

     *     *     *     *     *     *     *

(C) the sum of--

(i) the adjusted value of the qualified family-owned business interests described in paragraph (2), plus

(ii) the amount of the gifts of such interests determined under paragraph (3),

exceeds 50 percent of the adjusted gross estate * * *

Under section 2057(e)(1), definitional provisions are provided, and it is expressly stated in subparagraph (A) that a QFOBI with regard to a sole proprietorship means only an equity

interest therein (i.e., only an interest "as a proprietor").
Section 2057(e)(1)(A) provides as follows:

SEC. 2057.  FAMILY-OWNED BUSINESS INTERESTS.

(e)  Qualified Family-Owned Business Interest.--

(1)  In general.--For purposes of this section, the term "qualified family-owned business interest" means --

(A) an interest <u>as a proprietor</u> in a trade or business carried on as a proprietorship, * * * [Emphasis added.]

Under section 2057(e)(1)(B) relating to family-owned corporations and partnerships, no such express equity limitation on the definition of an interest in a family-owned entity is stated, and reference is made, in the flush language, only to "an interest in" a family-owned entity.  However, clauses (i) and (ii) of section 2057(e)(1)(B) immediately go on to require alternative 50-, 70-, and 90- percent family "ownership" in the entity--the so-called family ownership test.

Section 2057(e)(1)(B) provides as follows:

SEC. 2057.  FAMILY-OWNED BUSINESS INTERESTS.

(e)  Qualified Family-Owned Business Interest.--

(1)  In general.--For purposes of this section, the term "qualified family-owned business interest" means--

*     *     *     *     *     *     *

(B) an interest in an entity carrying on a trade or business, if

(i) at least--

(I) 50 percent of such entity is owned (directly or indirectly) by the decedent and members of the decedent's family,

(II) 70 percent of such entity is so owned by members of 2 families, or

(III) 90 percent of such entity is so owned by members of 3 families, and

(ii) for purposes of subclause (II) or (III) of clause (i), at least 30 percent of such entity is so owned by the decedent and members of the decedent's family.

Section 2057(e)(3)(A) goes on to provide specific rules for calculating the family-ownership test under section 2057(e)(1)(B)(i) and (ii), on the basis of the holding by family members of "stock" or partnership "capital" interests in the entity.  Section 2057(e)(3)(A) provides in part as follows:

SEC. 2057.  FAMILY-OWNED BUSINESS INTERESTS.

(e)  Qualified Family-Owned Business Interest.--

\*     \*     \*     \*     \*     \*     \*

(3)  Rules regarding ownership.--

(A) Ownership of entities.--For purposes of paragraph (1)(B)--

(i) Corporations.--Ownership of a corporation shall be determined by the holding of stock * * *

(ii) Partnerships.--Ownership of a partnership shall be determined by the owning of the appropriate percentage of the capital interest in such partnership.

If an estate claims and qualifies for a QFOBI deduction under section 2057(a), but if, within 10 years after the decedent's death, a qualified heir of the decedent disposes of any portion of a QFOBI, a recapture tax relating to the QFOBI deduction the estate claimed on its Federal estate tax return is triggered. Sec. 2057(f)(1)(B).

As noted, throughout section 2057 words expressly denoting equity ownership are used. Immediately preceding section 2057(e)(1)(B) is the express limitation on a sole proprietor's interest that (for purposes of the liquidity test of section 2057(b)(1)(C)) will be taken into account to that of "a proprietor". See sec. 2057(e)(1)(A). In addition, in section 2057(e)(3)(A) and (B) express references to "equity" interests are made by use of the words "stock", "capital", and "ownership interest in".

Petitioners argue that the absence in the language of section 2057(e)(1)(B) of an express limitation on the word "interest" (e.g., to a "capital" interest or to an "equity" interest) that (for purposes of the liquidity test of section

2057(b)(1)(C)) will be taken into account indicates that no such limitation was intended and therefore that "loan" interests should be taken into account. Petitioners cite the proposition that "where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed". 2B Singer, Sutherland Statutory Construction, sec. 51.02, at 199-201 (6th ed. 2000); see also United States v. Lamere, 980 F.2d 506, 513 (8th Cir. 1992) ("Where language is included in one section of a statute but omitted in another section of the same statute, it is generally presumed that the disparate inclusion and exclusion * * * [were] done intentionally and purposely."); Flahertys Arden Bowl, Inc. v. Commissioner, 115 T.C. 269, 274 (2000), affd. 271 F.3d 763 (8th Cir. 2001) (per curiam).

Petitioners also note that section 2057 contains a number of references to "any" interest in a qualified family-owned business, suggesting to petitioners that the reference in section 2057(e)(1)(B) to "an" interest is not to be limited to just an "equity" interest. See sec. 2057(e)(2)(A) ("any" interest in a trade or business); id. subpar. (B) ("any" interest in an entity); id. subpar. (C) ("any" interest in a trade or business).

We note that no regulations have been promulgated under section 2057.

The legislative history of section 2057 is not of particular help in resolving the issue before us. Petitioners point to a House-Senate conference committee report which contains a broad reference to "any" interest in a family-owned business, as follows:

> a qualified family-owned business interest is defined as any interest in a trade or business (regardless of the form in which it is held) with a principal place of business in the United states if ownership of the trade or business is held at least 50 percent by one family * * * [H. Conf. Rept. 105-220, at 396 (1997), 1997-4 C.B. (Vol. 2) 1457, 1866.]

Petitioners also argue that the general purposes of section 2057 stated in the legislative history support a broad reading of an interest which may qualify as a QFOBI. Those purposes were: (1) To reduce estate taxes for qualified family-owned businesses, (2) to protect and preserve family farms and other family-owned enterprises, and (3) to minimize the liquidation of such enterprises in order to pay estate taxes. S. Rept. 105-33, at 40 (1997), 1997-4 C.B. (Vol. 2) 1067, 1120; see also Staff of Joint Comm. on Taxation, General Explanation of Tax Legislation Enacted in 1997, at 65 (J. Comm. Print 1997). Petitioners contend that these legislative purposes would be frustrated if estates owning family businesses funded with equity qualified for the QFOBI deduction but estates owning similar family businesses funded in part with shareholder loans did not.

Respondent responds that estates holding loan interests would not have the same difficulties paying estate taxes as would estates holding only equity interests in family businesses because loan interests can be sold to unrelated investors to obtain cash without affecting the ownership structure of the family-owned business.

The parties refer to section 6166, an estate tax provision somewhat related to section 2057, and petitioners argue that the language thereof illustrates how Congress could have limited section 2057 had it intended to do so. Section 6166 provides for a deferral of the payment of Federal estate taxes where the decedent's interest in a closely held business exceeds 35 percent of the adjusted gross estate. For purposes of section 6166(b)(1), the statute expressly limits "interest in" a closely held business to an equity or ownership interest by using the terms "interest as a proprietor", "interest as a partner", and "stock". The relevant language of section 6166(b)(1) provides as follows:

> SEC. 6166. EXTENSION OF TIME FOR PAYMENT OF ESTATE TAX WHERE ESTATE CONSISTS LARGELY OF INTEREST IN CLOSELY HELD BUSINESS.
>
> (b) Definitions and Special Rules.--
>
> (1) Interests in closely held business.--For purposes of this section, the term "interest in a closely held business" means--

(A) an interest <u>as a proprietor</u> in a trade or business carried on as a proprietorship;

(B) an interest <u>as a partner</u> in a partnership carrying on a trade or business * * *

\*     \*     \*     \*     \*     \*     \*

(C) <u>stock</u> in a corporation carrying on a trade or business * * *. [Emphasis added.]

Respondent acknowledges the relationship between section 6166 and section 2057, but respondent argues that the limitations in section 6166 to equity ownership interests support respondent's position that section 2057(e)(1)(B) should be construed in a parallel manner to limit the QFOBI to an equity ownership interest.

Our holding herein is based largely on the close proximity of the language "interest in an entity" in section 2057(e)(1)(B) to the explicit equity ownership language of section 2057(e)(1)(B)(i) and (ii). We find it illogical to divorce the equity ownership requirements of section 2057(e)(1)(B)(i) and (ii) from the immediately preceding language. As we read the statute, the "interest in an entity" language of section 2057(e)(1)(B) encompasses, or embraces, or is limited to, only the type of interests (i.e., to equity ownership interests) that is described in the rest of the very same sentence (i.e., in the immediately following clauses of section 2057(e)(1)(B)).

Also, as previously noted, language connoting equity ownership is used pervasively in section 2057, and we conclude that the section 2057(e)(1)(B) definition of an "interest in an entity", for purposes of the qualified family-owned business interest deduction, is limited to equity ownership interests.

For the reasons stated, we conclude that the FGP loan interests held by decedents (directly and indirectly through their controlled partnerships) are not to be treated as QFOBIs for purposes of section 2057 and thus that the QFOBI deductions petitioners claimed are not allowable.

Other arguments made by the parties and not discussed herein we have considered and rejected as without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.