143 T.C. No. 11

UNITED STATES TAX COURT

DENNIS E. BOHNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24166-12.                    September 23, 2014.

While P worked for the Federal Government, he participated in the Civil Service Retirement System (CSRS). After P retired, he received a letter explaining that he could elect to increase his CSRS retirement annuity by remitting a fixed sum. P remitted the funds to CSRS. Because P did not have sufficient funds in his bank account, he borrowed a portion of the fixed sum. P paid off the loan and replenished his bank account by making withdrawals from his traditional individual retirement account (IRA).

P did not report any of the amounts he withdrew from his IRA as taxable income. P contends that he engaged in a tax-free rollover.

R contends that rollover contributions cannot be made to CSRS.

Held:  Because CSRS did not accept his remittance as a rollover, P must include his withdrawals in his taxable income for the year at issue.

Kathryn L. Everlove-Stone, for petitioner.

Joel D. McMahan, for respondent.

KERRIGAN, Judge:  Respondent determined a deficiency of $4,590 with respect to petitioner's Federal income tax for tax year 2010.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The sole issue for consideration is whether a tax-free rollover occurred when petitioner withdrew funds from his traditional individual retirement account (IRA) to cover a deposit of the same amount to the Civil Service Retirement System (CSRS).

FINDINGS OF FACT

Some facts have been stipulated and are so found.  Petitioner resided in Florida when he filed the petition.

Petitioner was an employee of the Social Security Administration in 2009 and retired before April 13, 2010. He was eligible to participate in Federal Government retirement plans offered through the Office of Personnel Management (OPM), and he participated in CSRS during his years of Government service.

After petitioner retired, OPM mailed him a letter on April 13, 2010, explaining that he could elect to increase his CSRS retirement annuity by remitting $17,832 with respect to creditable Government service for a period during which no retirement contributions had been withheld from his salary. The letter required that petitioner remit the funds within 15 days of the date of the letter. The letter was silent as to whether the remittance could be made through a tax-free rollover contribution.

Petitioner elected to remit to CSRS the $17,832 to increase his retirement annuity. Because petitioner did not have sufficient funds to make the entire payment directly from his bank account, he borrowed a portion of the $17,832 from a friend. On April 27, 2010, petitioner mailed a check to OPM for $17,832.

During 2010 petitioner maintained a traditional IRA with Fidelity Investments (Fidelity). Petitioner made two separate requests to withdraw funds from his Fidelity IRA, one in April 2010 and another in May 2010. Petitioner's monthly Fidelity investment report for April 2010 shows that he requested a

$5,000 distribution, of which $4,500 was sent to him on April 15, 2010, and $500 was withheld to satisfy Federal income tax liability in connection with the distribution. Petitioner's Fidelity investment report for May 2010 shows that he requested a $12,832 distribution, which was sent entirely to him on May 3, 2010; no Federal tax was withheld. Petitioner used the funds he received from Fidelity to reimburse his friend and to replenish his bank account.

Fidelity issued petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., in which it reported $17,832 in distributions and listed the entire $17,832 as taxable income. On his Form 1040A, U.S. Individual Income Tax Return, for tax year 2010 petitioner reported receipt of the $17,832 in distributions from his Fidelity IRA on line 11a, IRA Distributions. He did not report any of the $17,832 as taxable income as a result of those distributions on line 11b, Taxable Amount.

On July 2, 2012, respondent issued petitioner a notice of deficiency which determined a deficiency of $4,590 and treated the $17,832 withdrawal from the IRA as taxable income.

OPINION

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving those determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). The parties do not dispute any material facts; therefore, the burden of proof is not at issue.

I. CSRS

CSRS is a statutorily created retirement plan designed to provide retirement benefits in the form of annuities and lump-sum benefits to Federal civil service employees. See generally 5 U.S.C. secs. 8331-8351 (2006). The statutory provisions governing CSRS do not include a provision allowing pretax employee contributions. Id. An eligible employee contributes portions of his or her salary to CSRS, and the employing agency withholds the contributions from the employee's salary. Id. sec. 8334(a)(1)(A); Malbon v. United States, 43 F.3d 466, 467 (9th Cir. 1994); see also Logsdon v. Commissioner, T.C. Memo. 1997-8, slip op. at 3-4. Matching contributions are made from funds appropriated for the employing agency. 5 U.S.C. sec. 8334(a)(1)(B)(i).

To assure that income will be taxed only once, the Internal Revenue Code deems an annuity, such as one for a CSRS participant, to have two components:

one taxable, one not. <u>See</u> sec. 72; <u>Montgomery v. United States</u>, 18 F.3d 500 (7th Cir. 1994). The employing agency withholds a mandatory contribution from the employee's salary, and that withheld amount is after-tax income because it is taxable for the year in which it is withheld. <u>Malbon</u>, 43 F.3d at 467. On distribution that portion is nontaxable because it was already subject to tax. <u>See</u> <u>Montgomery</u>, 18 F.3d at 500. The amount contributed by the employing agency and any interest earned on the employee's investment are not taxed to the employee until distributed. Secs. 72, 402(a). This portion of the distribution is the taxable component. <u>Montgomery</u>, 18 F.3d at 500.

Petitioner contends that all distributions from CSRS are taxable and that unless the distributions from his IRA are excluded from income, he will be subject to double taxation. Petitioner will not be subject to double taxation, however, because under section 72 he will be able to exclude from his gross income CSRS distributions attributable to his previously taxed contributions to the plan. <u>See</u> sec. 72(c)(1)(A). Section 72(c)(1)(A) and (B) defines "investment in the contract" as of the annuity starting date as "the aggregate amount of premiums or other consideration paid for the contract, minus * * * the aggregate amount received under the contract before such date, to the extent that such amount was excludable from gross income under this subtitle or prior income tax laws."

CSRS provisions include that "[e]ach employee or Member credited with civilian service after July 31, 1920, for which retirement deductions or deposits have not been made, may deposit with interest an amount equal to * * * [certain statutorily defined] percentages of his basic pay received for that service". 5 U.S.C. sec. 8334(c). This provision allows civil service employees to elect to make a deposit for creditable Government service and thus increase their CSRS retirement annuity. See Dela Cruz v. OPM, 553 Fed. Appx. 977 (Fed. Cir. 2014).

II.     Rollover Contributions Under Section 408(d)(3)

In general, any amount paid or distributed out of an individual retirement plan is included in the gross income of the payee or distributee as provided in section 72. Sec. 408(d)(1); Arnold v. Commissioner, 111 T.C. 250, 253 (1998). This general rule does not apply to a rollover contribution. See sec. 408(d)(3)(A). A rollover contribution is any amount paid or distributed out of an IRA or individual retirement annuity to the individual for whose benefit the account or annuity is maintained if the entire amount received is paid into an eligible retirement plan no later than 60 days after receipt. Sec. 408(d)(3)(A)(ii); see also Schoof v. Commissioner, 110 T.C. 1, 7 (1998). An "eligible retirement plan" is defined as any (1) qualified trust; (2) annuity plan described in section 403(a);

(3) eligible deferred compensation plan described in section 457(b) which is maintained by an eligible employer described in section 457(e)(1)(A); or

(4) annuity contract described in section 403(b). Secs. 408(d)(3)(A), 402(c)(8)(B). A "qualified trust" is any employees' trust described in section 401(a) which is exempt from tax under section 501(a). Sec. 402(c)(8)(A). Respondent does not dispute that CSRS is a qualified trust.[1]

Respondent contends, however, that petitioner's deposit to CSRS does not constitute a rollover contribution under section 408(d)(3) because CSRS does not, and is not required to, accept rollovers.[2]

---

[1]The Commissioner has taken the position in published guidance that CSRS is a qualified trust under sec. 401(a). See Rev. Rul. 74-138, 1974-1 C.B. 29, 30 ("[CSRS] is a qualified trust under section 401(a) of the Code and is exempt from Federal income tax under section 501(a)."); Rev. Rul. 68-486, 1968-2 C.B. 184; Rev. Rul. 58-472, 1958-2 C.B. 30; IRS Publ'n 721, Tax Guide to U.S. Civil Service Retirement Benefits 13 (rev. Feb. 22, 2011) ("CSRS, FERS, and TSP are considered qualified retirement plans" for the purpose of determining whether a CSRS distribution can be used in a tax-free rollover to another plan or trust). CSRS is a plan that meets the requirements of sec. 401(a). Guilzon v. Commissioner, 97 T.C. 237, 241 (1991), aff'd, 985 F.2d 819 (5th Cir. 1993); Gomez v. Commissioner, T.C. Memo. 1996-212, slip op. at 5; Roundy v. Commissioner, T.C. Memo. 1995-298, aff'd, 122 F.3d 835 (9th Cir. 1997); Shimota v. United States, 21 Cl. Ct. 510, 519 (1990), aff'd, 943 F.2d 1312 (Fed. Cir. 1991).

[2]Respondent also contends that petitioner's deposit to CSRS is not a rollover because the funds paid to CSRS were not a distribution from an IRA. We have held that the phrase "if the entire amount is contributed into an eligible

(continued...)

Even though there is no specific provision in the Internal Revenue Code concerning whether a qualified trust must accept a rollover that is an indirect transfer from an IRA in order to constitute an eligible retirement plan for purposes of section 408(d)(3), this issue is contemplated in similar circumstances. Section 401(a)(31)(E) and the legislative history associated with the rollover provision of section 402 address this issue in the context of transfers from other qualified trusts. For the purpose of a direct transfer of eligible rollover distributions, a qualified trust plan must permit distributees to elect to have a distribution paid directly to an eligible retirement plan, which for this purpose must be a defined contribution plan that permits the acceptance of rollover distributions. The Senate report explaining this provision includes the following statement: "As under present law, a transfer cannot be made to another qualified plan unless the terms of the transferee plan permit the acceptance of such transfer." 138 Cong. Rec. S8180 (1992).

---

[2](...continued)
retirement plan" is not to be read so narrowly as to require the taxpayer to roll over the exact same money that he or she received in the distribution from the IRA. Zaklama v. Commissioner, T.C. Memo. 2012-346, at *68. Respondent did not raise the issue of the second IRA distribution's taking place after petitioner's deposit to CSRS, and we deem respondent to have waived that issue. In any event, our disposition of this case does not require addressing the timing of the second distribution.

The instant case does not involve a defined contribution plan; rather, it involves a defined benefit plan. However, for the reasons explained below, we conclude and hold that because CSRS did not accept petitioner's remittance as a rollover, he must include his withdrawals in his taxable income for 2010.

The letter that OPM sent to petitioner after he retired explained how he could make a deposit to make up for years for which no retirement contributions were withheld from his pay. The letter requested that a check be sent to OPM for these contributions; it is silent on whether the deposit can be made as a rollover. Title 5 U.S.C. sec. 8334(c) does not specifically permit civil service employees to remit the deposit by means of a tax-free rollover contribution from an IRA or another eligible retirement plan. The regulations promulgated under 5 U.S.C. sec. 8334(a)(2) likewise do not require CSRS to accept tax-free rollovers as a form of deposit. 5 C.F.R. sec. 831.303 (2001).

Amounts deposited under 5 U.S.C. sec. 8334(c) allow civil service employees to make up for years in which there were no contributions from their salaries. See 5 C.F.R. sec. 831.303. Deposited amounts take the place of after-tax contributions that were not originally made. See 5 U.S.C. sec. 8334(a), (c). Only the portion of a distribution from an IRA that is otherwise includible in gross income may be rolled over from the IRA to an eligible retirement plan other than

an IRA. Sec. 408(d)(3)(A)(ii); see Janine H. Bosley & Martha L. Hutzelman, Qualified Plans--Taxation of Distributions, 370-3d Tax Mgmt. (BNA), at A-158. After-tax contributions that were made to an IRA cannot be rolled over. See sec. 408(d)(3)(A)(ii); see also Bosley & Hutzelman, supra, at A-158. A rollover contribution does not result in taxation until distribution. See secs. 72, 408(d)(3)(A).

The instant case involves an indirect transfer. Because it was not a direct transfer, CSRS was likely not aware that petitioner was attempting to make a tax-free rollover contribution, and there is nothing in the record to suggest that petitioner informed CSRS of his attempt to make a rollover. Unless it explicitly accepted rollovers, a qualified plan such as CSRS would not be aware of the proper tax treatment of the payment upon distribution.

Even if CSRS accepted rollovers, section 408(d)(3)(A)(ii) would permit it to accept as a rollover only the portion of the IRA distribution includible in gross income. Petitioner attempted to effect a rollover in order to make the payment to CSRS with pretax dollars. Petitioner did not distinguish for CSRS the extent to which the payment was made with pre- or post-tax dollars. Petitioner's deposit was to make up for wage contributions which were not withheld in prior years; those contributions would have been taxable. CSRS does not provide for the

acceptance of rollovers.  Because the payment was not accepted as a pretax contribution, it is taxable.  See Montgomery, 18 F.3d at 500.  Therefore, section 408(d)(3) does not apply and the $17,832 petitioner withdrew from his Fidelity IRA must be included in gross income under section 408(d)(1).

Any contention we have not addressed is irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered for

respondent.

Reviewed by the Court.

THORNTON, COLVIN, GALE, GOEKE, PARIS, LAUBER, and NEGA, JJ., agree with this opinion of the Court.

VASQUEZ, J., concurring:  I concur with the opinion of the Court's holding that petitioner's payment to the Civil Service Retirement System (CSRS) was not a rollover.  I write separately to emphasize that this case can be resolved solely on the basis of the Office of Personnel Management's (OPM) authority to choose whether to accept rollovers.  I also take this opportunity to address Judge Buch's dissent.

I agree with the facts as laid out by the opinion of the Court.  OPM gave petitioner an opportunity to make a payment to CSRS in order to increase his annuity, as provided by 5 C.F.R. sec. 831.303(b) (2001).  See op. Ct. p. 3.  Within a two-month period, petitioner borrowed money from a friend, made a withdrawal from his Fidelity Investments individual retirement account (IRA), made the payment, made a second withdrawal from the same IRA, and repaid his friend.  See id. pp. 3-4.  The only question before us is whether one or both of the withdrawals from the IRA were rollover contributions to CSRS under section 408(d)(3).

As the opinion of the Court recognizes, CSRS is a qualified trust.  See id. p. 8 and note 1.  OPM administers CSRS.  5 U.S.C. sec. 8347(a) (2006); see also 5 C.F.R. sec. 838.101(a)(1) (2001) ("[T]he Civil Service Retirement System * * * [is] administered by the Office of Personnel Management".).  OPM's policy is to

not accept rollovers to CSRS. See op. Ct. pp. 11-12. Petitioner has failed to provide any authority requiring OPM to accept rollovers, and OPM did not treat petitioner's payment as a rollover. These are the only facts necessary to decide the issue before us.

"A trustee * * * has broad powers that are only 'limited by statute or the terms of the trust'". Dabney v. Commissioner, T.C. Memo. 2014-108, at *10 (quoting 3 Restatement, Trusts 3d, sec. 85 (2007)). In Dabney, the taxpayer attempted to invest in real property through an IRA he held with Charles Schwab & Co., Inc. (Charles Schwab). Id. at *3. The Internal Revenue Code does not prohibit IRAs from holding real estate. Id. at *10. However, Charles Schwab did not permit IRAs to purchase or hold real property. Id. at *3. We held that, because it was the trustee or custodian of the IRA, Charles Schwab's policies controlled and the taxpayer would not have been able to use his Charles Schwab IRA to hold the real property regardless of how he had structured the transaction. Id. at *11-*12.

The same analysis holds true here. As the administrator of CSRS, OPM may choose whether to accept rollover contributions to CSRS. No statute or regulation restricts OPM's authority to do so. OPM chose not to accept rollovers. Therefore, petitioner's payment to CSRS was not a rollover contribution.

In his dissent, Judge Buch raises the issue of the plain language of section 408(d)(3). The Supreme Court has stated:

> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. * * * Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. * * *

United States v. Am. Trucking Ass'ns, Inc., 310 U.S. 534, 543, 544 (1940) (fn. refs. omitted.) (quoting Ozawa v. United States, 260 U.S. 178, 194 (1922)).

Under Judge Buch's reading of the statute, neither CSRS nor any other qualified plan or trust has the discretion to choose whether to accept rollover contributions. I do not believe that such an approach is reasonable or in keeping with Congress' intent. See H.R. Rept. No. 107-51 (Part 1), at 81 (2001) ("Qualified plans are not required to accept rollovers."). The term "qualified plan" refers to "a plan which satisfies the requirements of section 401(a)." Sec. 1.401-0(b)(1), Income Tax Regs. As the opinion of the Court states: "CSRS is a plan that meets the requirements of sec. 401(a)". See op. Ct. p. 8 note 1. Qualified

plans have the discretion to decide whether to accept rollover contributions, and OPM exercised that discretion. No further analysis is required.

LAUBER, <u>J</u>., agrees with this concurring opinion.

HALPERN, J., dissenting: I join Judge Buch's dissent and write separately to explain why the second distribution fails. It fails under the statutory definition of a rollover. Mr. Bohner made his payment into CSRS on April 27, 2010, before he received the second distribution on May 3, 2010. Section 408(d)(3)(A) requires that the amount received as a distribution be paid into the eligible retirement plan no later than 60 days after distribution. A distribution cannot be rolled over before it is received. Judge Buch may not have included that reason because some joining his side opinion may have objected that that ground was not raised by respondent. That is not necessarily a valid objection.

A deficiency determination may be sustained upon any legal ground that supports it, even though the grounds relied upon by the Commissioner may have been different or unsound. Blansett v. United States, 283 F.2d 474, 478 (8th Cir. 1960); Metrocorp, Inc. v. Commissioner, 116 T.C. 211, 232 (2001); Smith v. Commissioner, 56 T.C. 263, 291 n.17 (1971); Wilkes-Barre Carriage Co. v. Commissioner, 39 T.C. 839, 845-846 (1963), aff'd, 332 F.2d 421 (2d Cir. 1964); Williams v. Commissioner, T.C. Memo. 1997-326. As we said in Barnette v. Commissioner, T.C. Memo. 1992-595, aff'd without published opinion sub nom. Allied Mgmt. Corp. v. Commissioner, 41 F.3d 667 (11th Cir. 1994):

It is the Court's right and obligation to decide the case upon what it considers to be the correct application of the law, based upon the record presented, whether the parties have properly pleaded the controlling issues or not. * * * [I]f the Court feels that a full and fair opportunity to present the facts has been given, and the Court feels that no further briefing on the law is necessary, the Court can go forward and decide the case on the record presented.

We have sufficient facts to permit us to determine that the second distribution fails under the statutory definition of a rollover because it could not be rolled over before it was received, and I believe that we are obligated to so conclude.

HOLMES and BUCH, JJ., agree with this dissent.

BUCH, J., dissenting: The opinion of the Court turns on the question of whether CSRS accepts rollovers, yet in that opinion a majority of the Court candidly states that "there is no specific provision in the Internal Revenue Code concerning whether a qualified trust must accept a rollover that is an indirect transfer from an IRA in order to constitute an eligible retirement plan for purposes of section 408(d)(3)". See op. Ct. p. 9. They then go on to create such a rule.

This may or may not be a good or wise rule, but that should be irrelevant. It is not our role to act as rulemaker. Indeed, on the same day the Court Conference considered this opinion, the Court of Appeals for the D.C. Circuit made this very point: "The Tax Court is in the business of interpreting and applying the internal revenue laws, see Freytag, 501 U.S. at 891, not in the business of making those laws." Kuretski v. Commissioner, 755 F.3d 929, 943 (D.C. Cir. 2014), aff'g T.C. Memo. 2012-262. After noting what the statute says (and does not say), we are to apply what is written. The Court of Appeals for the Eleventh Circuit (where an appeal of this case could be taken) reminded us of that earlier this year: "The 'preeminent canon of statutory interpretation' requires the court to 'presume that the legislature says in a statute what it means and means in a statute what it says there.'" Packard v. Commissioner, 746 F.3d 1219, 1222 (11th Cir. 2014) (quoting

Bed Rock, Ltd., LLC v. United States, 541 U.S. 176, 183 (2004), rev'g 139 T.C. 390 (2012).

Indeed, over the years circuit after circuit has had occasion to remind us of this point.  See Textron, Inc. v. Commissioner, 336 F.3d 26, 32 (1st Cir. 2003) ("Statutory language 'is the most persuasive evidence of the statutory purpose' and should not have been avoided by the Tax Court in this case." (quoting Woodral v. Commissioner, 112 T.C. 19, 22 (1999))), rev'g 115 T.C. 104 (2000); Estate of Swan v. Commissioner, 247 F.2d 144 (2d Cir. 1957) (reversing the Tax Court for failing to apply the plain meaning of the statute), aff'g in part, rev'g in part 24 T.C. 829 (1955); Zackim v. Commissioner, 887 F.2d 455 (3d Cir. 1989) (reversing the Tax Court for looking beyond the statute to a Senate report when the language of the statute is clear), rev'g 91 T.C. 1001 (1988); Hillman v. IRS, 263 F.3d 338, 342-343 (4th Cir. 2001) (holding that the plain meaning rule applies unless the literal application of the statute "produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary" or when literal application of the statute "produces an absurd result"), rev'g 114 T.C. 103 (2000); Estate of Monroe v. Commissioner, 124 F.3d 699 (5th Cir. 1997) (holding that the Tax Court incorrectly applied the law when it interpreted a statute in a way that conflicts with the statutory language), rev'g 104 T.C. 352 (1995); Limited, Inc. v.

Commissioner, 286 F.3d 324, 336 (6th Cir. 2002) ("[I]t is not the Tax Court's role to inject its own policy determinations into the plain language of statutes."), rev'g 113 T.C. 169 (1999); De Soto Sec. Co. v. Commissioner, 235 F.2d 409, 411 (7th Cir. 1956) ("The courts can only interpret congressional acts. They cannot legislate."), rev'g 25 T.C. 175 (1955); Estate of Farnam v. Commissioner, 583 F.3d 581 (8th Cir. 2009) (holding that when the language of the statute is plain and unambiguous, there is no need to look to policy considerations), aff'g 130 T.C. 34 (2008); Easson v. Commissioner, 294 F.2d 653, 657 (9th Cir. 1961) (reversing the Tax Court for "failing to adhere to the unambiguous language contained in the statutes in question"), rev'g 33 T.C. 963 (1960); Hawkins v. Commissioner, 86 F.3d 982, 989 (10th Cir. 1996) (holding that the Tax Court's interpretation of the statute was "unduly narrow" and ran counter to the plain meaning of the statute), rev'g 102 T.C. 61 (1994); Matthews v. Commissioner, 907 F.2d 1173, 1179 (D.C. Cir. 1990) (holding that the language of the statute is "too plain to be mistaken"), aff'g 92 T.C. 351 (1989).

And the Supreme Court has reminded us. Badaracco v. Commissioner, 464 U.S. 386, 398 (1984) (affirming the Court of Appeals for the Third Circuit's reversal of the Tax Court and stating that "[c]ourts are not authorized to rewrite a

statute because they might deem its effects susceptible of improvement"), aff'g 693 F.2d 298 (3d Cir. 1982).

We have acknowledged this point, as well. See Belk v. Commissioner, 140 T.C. 1, 10 (2013) ("When the plain language of the statute is clear and unambiguous, that is where the inquiry should end."). We often make this point in apologetic tones when denying a taxpayer a tax benefit not clearly contemplated by the Internal Revenue Code. See, e.g., Eichelburg v. Commissioner, T.C. Memo. 2013-269 at *7-*8 ("We acknowledge that the result we reach may seem harsh. * * * However, this Court may not rely on general equitable principles to expand the statutorily prescribed time for filing a petition." (Citations omitted.)); Cutler v. Commissioner, T.C. Memo. 2013-119, at *34 ("While we sympathize with her children, we must apply the law as written; it is up to Congress to address questions of fairness and to make improvements to the law."); Moody v. Commissioner, T.C. Memo. 2012-268, at *8 ("We are sympathetic to petitioner's plight; however, we are bound by the statute as written and the accompanying regulations when consistent therewith."); Ball v. Commissioner, T.C. Memo. 1995-520, slip op. at 13 ("While the result to petitioner may seem harsh, we cannot ignore the plain language of the statute and, in effect, rewrite the statute to achieve what might be an equitable result.").

So with that, I would look to the law as written and apply it to the material facts, which are fairly straightforward. Mr. Bohner worked for the Social Security Administration and participated in the CSRS during his years of service. After Mr. Bohner retired, he received a letter from OPM explaining that he could increase his CSRS retirement annuity by remitting $17,832 to make up for years when he did not have retirement contributions withheld. The letter required the amount to be paid within 15 days. The letter was silent as to whether that payment could be made through an indirect rollover.[1]

During 2010 Mr. Bohner maintained an IRA with Fidelity Investments. Mr. Bohner made two requests for distributions from his IRA. Here, the chronology becomes important. Fidelity made a first distribution of $5,000 on April 15, 2010, withholding $500 of Federal income tax. Mr. Bohner then borrowed money from a friend and mailed a check for the full $17,832 to OPM for payment into CSRS on April 27, 2010. Fidelity then made a second distribution of $12,832 on May 3, 2010. Mr. Bohner used these funds to reimburse his friend and replenish his bank account.

---

[1]Such a statement would not affect the outcome the opinion of the Court reaches, and whether any such statement would affect the outcome under the analysis in this dissent is not an issue before us.

The question for us to decide under the arguments properly preserved by the parties is whether Mr. Bohner made valid rollovers.[2]

The relevant statute is section 408(d). To begin, an IRA distribution is taxable as provided under section 72. Sec. 408(d)(1). However, that distribution is not taxable if it is a rollover. Sec. 408(d)(3)(A). That section sets forth the requirements of a rollover as follows:

> Paragraph (1) [providing that distributions are taxable] does not apply to any amount paid or distributed out of an individual retirement account or individual retirement annuity to the individual for whose benefit the account or annuity is maintained if--
>
>       \*       \*       \*       \*       \*       \*       \*
>
>      (ii) the entire amount received (including money and any other property) is paid into an eligible retirement plan for the benefit of such individual not later than the 60th day after the date on which the payment or distribution is received, except that the maximum amount which may be paid into such plan may not exceed the portion of the amount received which is includible in gross income (determined without regard to this paragraph).

CSRS is an "eligible retirement plan". Through a series of cross-references, a qualified trust is an eligible retirement plan. See secs. 408(d)(3) (flush language), 402(c)(8)(B). In Rev. Rul. 58-472, 1958-2 C.B. 30, the IRS held that CSRS, which was first created by the Civil Service Retirement Act of 1920, Pub.

---

[2]See op. Ct. p. 8 and note 2.

L. No. 66-215, 41 Stat. 614, is a qualified trust under section 401(a). Although revenue rulings are not binding on the Court, they may serve to bind the Commissioner where a longstanding revenue ruling that has not been modified or revoked is relevant to the case before us. Rauenhorst v. Commissioner, 119 T.C. 157, 173 (2002). The IRS has not revoked this revenue ruling, and respondent did not challenge CSRS' status as a qualified trust here. Accordingly, CSRS is a qualified trust and therefore an eligible retirement plan.

So we must see whether either of the two distributions qualifies as a rollover. The opinion of the Court denies rollover treatment for both distributions in one fell swoop.

Like the facts, the law is fairly straightforward. The requirements for a distribution to be treated as a rollover are found in section 408(d)(3)(A)(ii). A distribution from an IRA will not be included in gross income if the entire amount received from the IRA is paid into an eligible retirement plan no later than 60 days after the date the payment is received. Mr. Bohner received the first distribution on April 15, 2010. Twelve days later, Mr. Bohner wrote a check exceeding the amount of the distribution to OPM for payment into CSRS. Accordingly, he fulfilled all of the requirements for a rollover contribution under section

408(d)(3)(A)(ii), and the first distribution should not be included in his gross income.

The opinion of the Court makes it abundantly clear that there is no rule that overrides the rollover treatment allowed under section 408. The opinion cites section 401(a)(31), which relates to the qualification of a plan, not the tax treatment of a rollover.[3] The opinion cites section 402, which relates to rollovers from exempt trusts, not rollovers from IRAs. In fact, the opinion does not cite any specific provision in section 402 but rather cites the legislative history of 1992 amendments to section 402.

In looking to analogous provisions to assist in interpreting section 408, the opinion of the Court has done the exact opposite of what canons of statutory construction instruct. Canons of statutory construction encourage courts to look to analogous provisions when resolving ambiguity in the provision under consideration. Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932) ("Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."). Where

---

[3]Both the opinion of the Court and respondent cite a regulation for the proposition that eligible retirement plans are not required to accept rollovers. Sec. 1.401(a)(31)-1, Q&A-13, Income Tax Regs. The regulation is irrelevant because it not only addresses the qualification requirements for a plan (an issue not before us); it also relates to accepting direct rollovers, which are not at issue here.

one provision contains a specific rule and another is silent, canons of statutory construction tell us that the omission is intentional. Rand v. Commissioner, 141 T.C. 376, 390-391 (2013). And we should interpret the provision consistent with the omission; we do not add a rule to the statute that Congress did not itself include.

The strongest statutory authority the opinion of the Court can muster is the statement "The statutory provisions governing CSRS do not include a provision allowing pretax employee contributions." See op. Ct. p. 5. But the statutory framework of CSRS also does not include a provision prohibiting pretax employee contributions. A review of that statutory framework reveals that it is silent on the subject of its Federal income tax treatment. 5 U.S.C. secs. 8331-8351 (2006). The only tax-related provisions within CSRS's governing statutes relate to State taxes and withholding. 5 U.S.C. sec. 8345(k).

The provisions governing the tax treatment of CSRS distributions and rollovers into the CSRS are (unsurprisingly) found in title 26, the Internal Revenue Code. Section 408(d)(3) governs rollovers from an IRA. That provision tells us that a rollover distribution is to be treated as income on the contract when contributed to the new plan. Sec. 408(d)(3)(H)(ii)(II). If treated properly, that amount would be taxable when paid out by CSRS. Sec. 72(b) (because it is not

treated as an investment in the contract, it is not part of the amount that is excluded from income).

The opinion of the Court seems intent on solving a problem that does not exist. The statutory scheme places no weight on whether CSRS has a practice of accepting rollover contributions. Indeed, the statute places no weight on a plan's preferences regarding accepting rollovers when determining the taxability of a rollover distribution. The Internal Revenue Code, however, would tax that rollover when it comes out of CSRS. If CSRS does not properly account for that (a fact that is not in the record), then that is a problem for those who administer CSRS to resolve, not the Court.

The concurring opinion cites Dabney v. Commissioner, T.C. Memo. 2014-108, for the proposition that the trustee or custodian of a plan can restrict the types of investments the plan will allow, even when the statute would otherwise permit the investment. See concurring op. p. 14. Dabney is inapposite because the question presented to the Court was whether the distribution at issue was either an investment by Mr. Dabney's IRA or a transfer between IRA trustees. Mr. Dabney did not intend or attempt to make a rollover contribution under section 408(d)(3) from one retirement account to another; rather, Mr. Dabney attempted to change the investments within his IRA in violation of the trustee's internal

policies. Mr. Dabney claimed that he acquired an investment in real property as agent for the IRA trustee; however, he could not act as agent for the trustee where then trustee had a policy against investing in real property. Our approval of the IRA trustee's right to restrict the investment of IRA funds is not authority for the proposition that an otherwise qualified recipient of an IRA rollover contribution may, through its internal policies, cause the contribution not to qualify as such. Thus the analysis in Dabney has no bearing on the case before us.

On the basis of the foregoing, the first distribution fulfills the necessary requirements for a rollover contribution. As for the second of the two Fidelity distributions, that distribution may fail to qualify as a rollover for reasons not addressed here.

Because Mr. Bohner complied with all the necessary steps to make a rollover contribution as to the first distribution, I dissent.

HALPERN, FOLEY, HOLMES, GUSTAFSON, and MORRISON, JJ., agree with this dissent.